WANDA SEROWSKI, Plaintiff-Appellee, *v.* EUGENE KLAPPER *et al.*, Defendants-Appellants.

First District (5th Division)   No. 78-186

Opinion filed October 13, 1978.

Harlene Matyas, of Law Offices of Thomas J. Keevers, of Chicago, for appellants.

Lee Philip Forman, Ltd., of Chicago, for appellee.

Mr. JUSTICE MEJDA delivered the opinion of the court:

This action arose out of an automobile collision between plaintiff, Wanda Serowski, and the defendant, Eugene Klapper, while the latter was operating a vehicle as agent for the defendant, United Parcel Service, Inc. (UPS). The trial court entered an order granting plaintiff's motion for summary judgment on the issue of liability alone. Subsequently, the court entered an order denying defendants' petition for a rehearing in this regard. Thereafter the jury, sitting on the issue of damages only, returned a verdict for plaintiff in the amount of $2500. Defendants appeal. The sole issue on appeal is whether the trial court erred in entering a summary

judgment in favor of plaintiff on the issue of liability. We reverse and remand. The pertinent facts follow.

Plaintiff's complaint alleged that on December 18, 1974, defendant Klapper was operating a motor vehicle, as the agent of UPS, in a westerly direction on Schubert Street, Chicago, at its intersection with Lavergne Street. At that same time plaintiff was driving her car in a southerly direction on Lavergne Street, near the same intersection. Plaintiff alleged that defendants were guilty of certain acts of negligence which caused their vehicle to strike hers at this intersection, resulting in severe injuries to plaintiff. Specifically, plaintiff alleged that defendant Klapper carelessly, negligently, and improperly operated his vehicle without exercising reasonable care and all due caution so as to avoid injuring plaintiff; that he failed to keep his vehicle under proper control so that it could be readily stopped or slackened in speed; and that he drove his vehicle without keeping a proper and reasonable lookout ahead for persons and vehicles on nearby thoroughfares. The complaint also alleged that at all times relevant plaintiff was in the exercise of due care and caution for her own safety and for the safety of others.

Defendants, in turn, simultaneously filed a jury demand as well as their answer to plaintiff's complaint. Defendants' answer denied the material allegations of the complaint, and in particular denied any acts of negligence on their part. Furthermore, defendants denied that at the time of the occurrence plaintiff was in the exercise of all due care and caution for her own safety and the safety of others.

On March 7, 1977, plaintiff filed her motion for summary judgment. Contained therein were excerpts from defendant Klapper's deposition, relevant portions of which follow:

"Q. How great a distance had you traveled from your last stop before the accident occurred until the point where the accident occurred.

A. Well, I made a delivery stop and I was parked clear of the sidewalk as it is at the intersection. And then I had just put the vehicle into gear and looked to my left and looked to my right and looked to my left again. And when I had looked in both directions, there had been no traffic coming because I was pulling away from the curb. And as I was pulling away from the curb, I was entering the intersection.

❊ ❊ ❊

Q. How far was it that you had to travel towards the corner of Lavergne and Schubert before you could start seeing northbound down Lavergne?

A. Approximately 10 or 15 feet.

Q. That would have left you approximately 30 feet or so to go before the intersection?

A. Approximately.

Q. So, you looked left first, then right, then left again?

A. That's right. That's correct, sir.

Q. Now, when you first glanced left, you were approximately 30 feet from the intersection. When you looked right, how close to the intersection were you? Your vehicle was moving during this period of time?

A. It was moving at a slow rate of speed, possibly 2 or 3 miles an hour.

Q. Okay. So, when you were looking right, how close to the intersection were you?

A. I'd say I was within 15 feet of the intersection when I looked to the right.

\* \* \*

Q. When you looked to the right, you saw no traffic heading southbound?

A. Nothing at all, sir.

Q. How far down the block could you see when you looked southbound?

A. Southbound?

Q. Yes.

A. I could see down approximately 200 feet.

Q. When you looked northbound, how far down could you see?

A. I could see up to the next alley, which would be roughly 200 feet.

Q. How far into the intersection was the front of your vehicle when it made contact with the Serowski vehicle?

A. It was three-quarters of the way into the intersection.

Q. What part of your vehicle and what part of the Serowski vehicle came into contact?

A. My right front bumper made contact with her left rear door and part of the body in back of the door, if I remember correctly.

Q. Did you have an opportunity at any time before impact to sound your horn?

A. No, sir.

Q. Did you have an opportunity at any time before impact to step on your brakes?

A. I made a stab at the brakes but there was not enough time for them to have any effect."

The deposition continued with questioning concerning the vehicle driven by defendant Klapper. Normally he drove a van for UPS, but on the date

of the instant occurrence he was driving a package car, commonly called a Divco.

"Q. Is there anything different about the way this Divco drives from a van?

A. Well, sir, it's a world of difference.

Q. Is the Divco more difficult to operate?

A. In my opinion, yes, it's more difficult. There's more blind spots on the vehicle.

Q. Was there any sliding doors on the truck?

A. Yes, sir.

Q. Were these doors both closed when you left the curb?

A. Yes, sir.

Q. Were they quite high off the ground?

A. Yes, sir. Your window occupies roughly, oh, 40 percent of the door; the rest of it is solid metal.

Q. When you look through the door window, can you see vehicles that are very close to you to your right or does the door, the height of the door, hide these vehicles?

A. Sir, there's a door post and the door itself goes up against a post. And then you have a window, that provides you with your view on the right side. You have that post in between the two pieces of glass.

Q. Does that post obstruct your view of vehicles coming from your right?

A. I would say it could, sir.

Q. The question I asked is whether or not you feel that the manner in which the door was constructed, including the door post, in any way obstructed your view of seeing Mrs. Serowski, regardless of whether she was traveling at a high rate of speed or not.

A. I believe a vehicle approaching at a high rate of speed would be obstructed, the driver's view could be obstructed for that split second."

Plaintiff concluded from the foregoing that defendant Klapper's own testimony established his negligence in approaching the intersection in a truck in which his vision was obstructed. Further, she contended that Klapper pulled away from the curb at a "great rate of speed and did not look to the right," or else he would have seen plaintiff. Finally, plaintiff's motion stated that the deposition shows no negligence on her part and the only conclusion to be drawn from Klapper's own testimony was that he was negligent and failed to yield the right of way, while plaintiff herself was free of any negligence.

A hearing was held on plaintiff's motion on June 16, 1977. Defendants

filed no written response to the motion; however, oral argument was had and defendant Klapper's deposition was filed in open court. Thereafter, the court entered an order granting summary judgment in favor of plaintiff on the issue of liability.

On July 5, 1977, defendants filed a petition for rehearing on plaintiff's motion for summary judgment. The petition recited certain portions of defendant Klapper's deposition, including the following:

"Q. Do you have an opinion based upon your experiences in this accident itself as to whether or not that door post or the manner in which the truck was constructed in any way obstructed your view from seeing Mrs. Serowski?

A. Well, my opinion is that the young lady in question—when I looked to the right I didn't see her there; and I believe that she made the light up at Diversey and Lavergne at a high rate of speed, never expecting to encounter any cross-traffic at the next street.

* * *

Q. * * *. Now, during the limited period of time you saw her vehicle, did you gain an opinion as to the rate of speed that she had traveled up to the scene of the accident? * * *.

A. I believe her vehicle was deaccelerating [sic] from a high rate of speed and she thought she could get around the front of my truck.

* * *

Q. Also, Mr. Forman [plaintiff's attorney] asked you about any further conversations with Miss Serowski, the plaintiff in this matter. Do you remember being in a police car with her?

A. Yes. The officer had Miss Serowski and I both in the police car.

* * *

Q. What did Miss Serowski say at that time, if anything?

A. She was under the impression maybe she might have been at fault at that."

The petition also incorporated certain portions of plaintiff's deposition, of which excerpts follow:

"Q. Do you remember what speed you were traveling?

A. At about 25.

Q. Do you remember what speed the UPS truck was traveling?

A. I don't remember but it was going fast.

* * *

MR. LIVENSPARGER [defense counsel]: Was he going faster than you were?

A. I think so.

Q. How long before the impact did you see the truck?

A. A few seconds I think.

Q. Where was he located when you first saw him?
A. About two cars away.
Q. Two cars?
A. Three cars away.

* * *

Q. Did you sound your horn?
A. No.

* * *

Q. Did you put on your brakes at all?
A. Not when I seen him by my side.

* * *

Q. Did you accelerate and attempt to get around the truck?
A. Get a little bit out of the way.
Q. Did you have any conversation with the police officer?
A. No.
Q. Did you ever tell the officer that you guessed you didn't have the right-of-way?
A. I don't think. I don't know. I don't remember.
Q. Did you ever tell anyone else that you told the policeman that you guessed you didn't have the right of way?
A. I don't think so."

The petition concluded that on the basis of such evidence significant questions of fact remained regarding liability for the instant occurrence, and prayed that the prior grant of summary judgment for plaintiff be vacated and plaintiff's motion be denied.

On August 16, 1977, a hearing was held on defendants' petition. The court concluded, in sum, that if this case were presented to a jury it would have to direct a verdict for plaintiff, and therefore it entered an order denying defendant's petition.

Subsequently, a jury trial on the issue of damages alone was held. The jury returned a verdict in the amount of $2500. Judgment was entered on the verdict, and this appeal follows.

OPINION

Section 57(3) of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 57(3)) provides that summary judgment is appropriate "* * * if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment or decree as a matter of law." Thus, summary judgment is proper when the issue is determinable solely as a question of law. *Sidwell v. Sidwell* (1975), 28 Ill. App. 3d 580, 328 N.E.2d 595; *Applicolor, Inc. v. Surface Combustion Corp.* (1966), 77 Ill. App. 2d 260, 222 N.E.2d 168.

In ruling on a motion for summary judgment, the trial court must

construe the pleadings, depositions and affidavits included therein most strictly against the moving party and most liberally in favor of the opponent. (*Harris Trust & Savings Bank v. Joanna-Western Mills Co.* (1977), 53 Ill. App. 3d 542, 368 N.E.2d 629; *Lumbermens Mutual Casualty Co. v. Poths* (1968), 104 Ill. App. 2d 80, 243 N.E.2d 40.) Inferences may be drawn from the facts which are not in dispute, and if fairminded persons could draw different inferences from these facts, then a triable issue exists. (*Harris Trust & Savings Bank v. Joanna-Western Mills Co.*; *McHenry Sand & Gravel, Inc. v. Rueck* (1975), 28 Ill. App. 3d 460, 328 N.E.2d 679.) In sum, the right of a party to summary judgment must be clear and free from doubt. *McHenry Sand & Gravel, Inc. v. Rueck*; *Dakovitz v. Arrow Road Construction Co.* (1975), 26 Ill. App. 3d 56, 324 N.E.2d 444.

Application of the foregoing principles in the instant case mandates that the trial court's grant of summary judgment in favor of plaintiff be reversed, and this cause be remanded for a full trial on the merits. In our view, triable issues of fact exist concerning the central issue of liability for the instant occurrence.

In support of her motion for summary judgment, plaintiff recited certain portions of defendant Klapper's testimony, and concluded that such testimony sufficiently established defendants' negligence as a matter of law.

■■ Defendant did not file a written response to the motion for summary judgment and the trial court had only those portions of defendant Klapper's deposition which most clearly showed his negligence. Defendant could have cited portions of plaintiff's deposition to clearly controvert the inferences of negligence, as he did on his petition for rehearing. With only that evidence before it, the trial court might have determined that there was no question as to the defendant's negligence. However, even if defendant's negligence was shown by his deposition, there was no showing of plaintiff's lack of contributory negligence and therefore no prima facie case for liability. Upon rehearing, when the controverting testimony was brought out, the summary judgment should have been vacated. Since reasonable men could differ over the inferences of fact to be drawn from the testimony in this case, summary judgment was improper.

First of all, plaintiff's conclusion that Klapper pulled away from the curb at a great rate of speed without looking to the right is clearly controverted by Klapper's testimony. He stated that he was traveling at about 3 miles per hour in the intersection and that he looked both ways, and saw no oncoming traffic, before entering the intersection.

Secondly, plaintiff's conclusion that the truck used by Klapper obstructed his view of her approaching car is also controverted. While

Klapper did state that blind spots existed in the Divco, he answered plaintiff's counsel's questions in this regard by merely stating that the doorpost "could" obstruct his view of oncoming cars. In addition, the following exchange occurred with his own attorney:

"Q. Mr. Klapper, when Mr. Forman asked you about the posts in the window which could possibly obstruct your view of an approaching vehicle, in your opinion, did it in fact obstruct your view on the day of the accident?

A. Yes, I do believe it did."

However, this does not establish as a matter of law that defendant Klapper's view *of plaintiff's car* was obstructed. It merely establishes that the doorpost was an obstruction, and viewing the testimony in its light most favorable to defendants, plaintiff's car might not have been in a position to be affected by the obstruction. As defendant Klapper indicated, plaintiff might have just made the light at the intersection of Lavergne and Diversey and did not enter his line of vision until after he had turned back again to look to the left. Whether it would be possible for plaintiff to then reach the scene of the accident before defendant could have again looked to the right is a question for the jury to decide.

■ Furthermore, we note that even assuming *arguendo* that defendant Klapper's view of plaintiff's oncoming car was obstructed, the question of proximate causation still exists. In addition to negligence on the part of a defendant, a plaintiff, in order to recover in a tort case, must prove that his injuries were proximately caused by such negligence. (See *Publication Corp. v. Chicago River & Indiana R.R. Co.* (1977), 49 Ill. App. 3d 508, 364 N.E.2d 523.) In this case it is possible to infer that an intervening factor caused the accident and its resulting injuries.

Considering the testimony on the relative speeds of the vehicles in this case in its light most favorable to defendants, one concludes that the UPS truck was moving into the intersection at 2 to 3 miles per hour, while plaintiff traveled at 25 miles per hour. Under these facts, considering the manner of impact, one must also conclude that the UPS truck entered the intersection first, before plaintiff reached it. Indeed, plaintiff stated that she first saw the UPS truck while it was still two or three car lengths away, yet failed to brake or sound her horn. The jury might well conclude under such facts that it was such inaction by plaintiff which caused the accident, rather than any obstructed view on Klapper's part.

Plaintiff contends that the trial court in this case granted her motion on the basis of the "looked but did not see doctrine." (See *Payne v. Kingsley* (1965), 59 Ill. App. 2d 245, 207 N.E.2d 177.) However, viewing the evidence in this case most favorably to defendants, it is not clear that Klapper failed to observe that which he clearly should have seen. As noted, plaintiff's car might have passed the intersection of Lavergne and

Diversey after Klapper looked to the right and proceeded slowly into the intersection. Furthermore, it is apparent, since he tried to apply his brakes, that Klapper did see plaintiff before the actual collision. Whether he or plaintiff had the right-of-way prior to this sighting and collision is, under these facts, a question for the jury.

■■ Lastly, we would note that on the basis of contributory negligence alone this case must be reversed and remanded. It is incumbent upon plaintiff in a tort case in Illinois to prove freedom from contributory negligence. (See *Angelini v. Snow* (1978), 58 Ill. App. 3d 116, 374 N.E.2d 215.) Plaintiff's motion for summary judgment was devoid of any facts upon which a judgment in her favor could be made on this issue. This was not a case in which a sworn affidavit, purporting to represent the only testimony to be adduced at trial, was submitted and failed to show any negligence on plaintiff's part. In such cases it is necessary to file counteraffidavits since the mere allegations of the defendant's pleadings would not suffice to establish a triable question of fact. (See *Murphy v. Ambassador East* (1977), 54 Ill. App. 3d 980, 370 N.E.2d 124; *Manda v. Branham* (1977), 50 Ill. App. 3d 91, 365 N.E.2d 216.) Rather, plaintiff's motion was merely supported by excerpts from defendant Klapper's deposition alone. This was not sufficient to establish as a matter of law, in this case, her freedom from contributory negligence. This is especially true since Klapper's deposition indicated that plaintiff had made an admission of fault at the scene, though this was controverted by plaintiff's deposition.

Furthermore, as noted earlier, the facts as viewed under both Klapper's and plaintiff's depositions could support a conclusion that defendants' vehicle was the first to enter the intersection. The jury might conclude that (a) such entry was in sufficient time and manner to allow the UPS truck to have the right-of-way; or (b) if plaintiff did see the UPS truck while it was still two or three car lengths away she could have avoided the accident; or perhaps (c) plaintiff should have seen the UPS truck at an earlier opportunity and slowed her speed approaching the intersection. The possibility of such inferences clearly demonstrates that the question of plaintiff's freedom from contributory negligence in this case is for the jury to decide.

For all of the foregoing reasons, we conclude that the trial court erred in granting plaintiff's motion for summary judgment on the issue of liability. Therefore, the entire judgment of the circuit court must be reversed, and this cause remanded for a full trial on the merits.

Reversed and remanded.

SULLIVAN, P. J., and WILSON, J., concur.