WILBUR SPONEMANN *et al.*, Plaintiffs-Appellants, *v.* COUNTRY MUTUAL INSURANCE COMPANY, Defendant-Appellee.

Fifth District    No. 80-162

Opinion filed July 28, 1981.

Dunham, Boman & Leskera, of Belleville (John W. Leskera, Robert D. Francis, and Russell K. Scott, of counsel), for appellants.

Stephen W. Thomson, of Reed, Armstrong, Gorman and Coffey, of Edwardsville, for appellee.

Mr. JUSTICE JONES delivered the opinion of the court:

Plaintiffs appeal a summary judgment rendered in favor of defendant insurance company in plaintiffs' action upon the uninsured motorist clause of an automobile insurance policy issued to plaintiff by defendant. We reverse and remand.

On October 23, 1975, plaintiffs, Wilbur, Frieda, Susan and Peggy Sponemann, filed suit upon an automobile insurance policy against defendant, Country Mutual Insurance Company, the issuer of the policy. In the complaint plaintiffs alleged that on August 26, 1972, they were insured by defendant and at that time they sustained injuries in a collision with an uninsured motorist in Craig County, Oklahoma, and they were therefore entitled to payment of claims under the uninsured motorist provision of their policy. In the complaint plaintiffs sought: (a) a declaration that the other motorist was "uninsured" because he could not be located; (b) a declaration that plaintiffs are entitled to arbitration as provided in their policy; (c) an order enjoining defendant from intervening in plaintiffs' Oklahoma action; (d) a declaration that defendant had forfeited all defenses against plaintiff because of a vexatious refusal to arbitrate; and (e) punitive damages. On January 21, 1976, the court struck the complaint, and on February 20, 1976, granted plaintiffs leave to file an amended complaint.

On April 7, 1976, plaintiffs filed an amended complaint alleging the same matters contained in their original complaint and added that prompt notice of the Oklahoma accident was given to defendant and that defendant had assured plaintiffs that uninsured motorist benefits would be paid. According to the amended complaint no disagreement as to payment arose until January 1975, at which time plaintiffs made a demand for arbitration as provided in the policy. Plaintiffs sought the same five remedies which they had requested in the original complaint. On June 14, 1977, the trial court dismissed the amended complaint, ruling that plaintiffs' allegations of estoppel were insufficient but that plaintiffs could file a second amended complaint.

Plaintiffs filed a second amended complaint on July 1, 1977, alleging the matters contained in their original and amended complaints and, addi-

tionally, that: (1) defendant had engaged in conduct designed "to lull the plaintiffs into a reasonable belief that their claim for uninsured motorist coverage would be settled without arbitration * * * and defendant is equitably estopped from asserting the two year limitation provision of the policy"; and (2) "defendant further required and induced plaintiffs to file an action against the uninsured motorist * * * in Oklahoma." After denying defendant's motions to dismiss, the trial court entered an order on January 9, 1980, which granted defendant's motion for summary judgment. On March 14, 1980, the trial court denied plaintiffs' post-judgment motion, entering a written order which stated:

"Post judgment motion comes on for hearing. The court denies said motion but orders that its order of January 9, 1980, be clarified to show that the court granted the motion for summary judgment on the basis that the claim is barred under the doctrine of res judicata. The court made no other determination as to the merits of the suit and that so far as the court's order of January 9, 1980, is inconsistent with this order it is ordered modified."

Plaintiffs appeal the summary judgment of January 9, 1980, and the order of March 14, 1980, and defendant cross-appeals the trial court's failure to grant defendant's motion to dismiss the second amended complaint.

The March 14, 1980, order of the trial court indicates that its decision to enter summary judgment for defendant was based solely on the *res judicata* effect it gave to the decision of the District Court of Craig County, Oklahoma. In view of the importance of that action, we believe that a discussion of the facts leading up to that litigation is necessary. Defendant never filed anything to counter plaintiffs' evidence that defendant had directed plaintiff to file suit against the uninsured motorist in the appropriate court in Oklahoma. The undisputed affidavit of plaintiffs' attorney states that: "* * * sometime prior to August 26, 1976, I conferred with a representative from the defendant, Country Mutual, who directed that I file in Oklahoma a lawsuit against the uninsured motorist Joseph J. Hajjar [and] in compliance with that direction our law firm filed such action * * *." That suit was in fact filed, even though plaintiffs' undisputed answers to defendant's interrogatories further stated that "* * * information supplied by the defendant * * * indicate[s] Hajjar has no insurance." Thus the only evidence before the court when ruling on defendant's motion for summary judgment indicated that plaintiffs had nothing directly to gain from suing Hajjar but that they did so merely as a convenience to defendant to protect its subrogation rights.

Undisputed answers by plaintiffs to additional interrogatories propounded by defendant disclosed why plaintiffs were so willing to cooperate with defendant's request that they sue Hajjar in Oklahoma. Those interrogatory answers stated that: "* * * payments of medical

expenses have been made by the defendant * * *," and the parties had agreed, "* * * that benefits would be paid by the defendant to the plaintiffs under the uninsured motorist coverage * * *." Other answers to interrogatories asserted that an agent of defendant had discussed arbitration with plaintiffs and had assured their attorney "* * * that it was not necessary to file a demand for arbitration because there was no dispute as to the claim of the Sponemanns but it was necessary that all the medical reports be obtained * * * [because] the only question was the nature and extent of the injury to the Sponemanns."

■■ The allegations of plaintiffs' complaint, the affidavit of plaintiffs' attorney and the answers to interrogatories as described were before the trial court as it considered defendant's motion for summary judgment. No countervailing assertions were advanced by defendant.

> "In ruling on a motion for summary judgment, the trial court must construe the pleadings, depositions and affidavits included therein most strictly against the moving party and most liberally in favor of the opponent. (*Harris Trust & Savings Bank v. Joanna-Western Mills Co.* (1977), 53 Ill. App. 3d 542, 368 N.E.2d 629; *Lumbermens Mutual Casualty Co. v. Poths* (1968), 104 Ill. App. 2d 80, 243 N.E.2d 40.) Inferences may be drawn from the facts which are not in dispute, and if fairminded persons could draw different inferences from these facts, then a triable issue exists. (*Harris Trust & Savings Bank v. Joanna-Western Mills Co.; McHenry Sand & Gravel, Inc. v. Rueck* (1975), 28 Ill. App. 3d 460, 328 N.E.2d 679.) In sum, the right of a party to summary judgment must be clear and free from doubt. *McHenry Sand & Gravel, Inc. v. Rueck; Dakovitz v. Arrow Road Construction Co.* (1975), 26 Ill. App. 3d 56, 324 N.E.2d 444." *Serowski v. Klapper* (1978), 65 Ill. App. 3d 238, 243-44, 382 N.E.2d 499, 503.

Thus, if we accept plaintiffs' uncontroverted assertions as true, as we may do in this case considering defendant's motion for summary judgment, we find that defendant assured plaintiffs that benefits would be paid to them under the uninsured motorist provision of their policy. Because of that assurance plaintiffs complied with defendant's request and filed suit in the District Court of Craig County, Oklahoma, on August 20, 1974, against the uninsured motorist, Joseph J. Hajjar.

Once the Oklahoma suit was commenced defendant apparently changed its position. Not only did negotiations break down in Illinois, but defendant refused plaintiffs' request for arbitration as required by both the terms of the policy and Illinois law. (Ill. Rev. Stat. 1979, ch. 73, par. 755a.) Only after the Oklahoma suit was filed did defendant do a turnabout and dispute its liability to plaintiffs. Defendant accomplished that by filing a petition to intervene in the Oklahoma action on October 7,

1975. In that petition defendant denied both plaintiffs' injuries and Hajjar's negligence and alleged that plaintiff Freida Sponemann was negligent and that her negligence proximately caused the accident.

On January 16, 1977, defendant filed an amendment to its petition to intervene in Oklahoma. The amendment alleged that plaintiffs' cause of action against Hajjar was barred by the Oklahoma Statute of Limitations because Hajjar had not been served within two years. The amendment also alleged that plaintiffs' action against defendant was barred by failure to comply with unspecified provisions of the insurance policy. On April 26, 1977, defendant made a motion for summary judgment in the Oklahoma action on the basis of the Statute of Limitations. On July 1, 1977, the Oklahoma court entered an order granting defendant's motion for summary judgment, which in pertinent part provided:

"* * * Said Motion for Summary Judgment should be and hereby is sustained on the basis that Plaintiffs' cause of action herein against Joseph J. Hajjar the alleged uninsured motorist was not properly commenced within the two-year period of statutory limitation, and further that the Plaintiffs' claim was not duly commenced with the policy limitation period as contained within the Country Mutual Insurance Company policy."

Plaintiffs did not appeal that order of the Oklahoma court.

Our consideration of the record before us justifies the deduction that defendant did not act in good faith. We would specifically note that defendant's present counsel had no part in any of the matters that preceded the filing of the instant case. The undisputed evidence shows that the claims between plaintiffs and defendant presented a case for a legitimate Illinois venue. The plaintiffs are Illinois residents. The defendant is an Illinois company. The contract of insurance was issued in Illinois. Illinois was a proper forum, and it was in Illinois that plaintiffs had negotiated their claims with defendant, their own insurer. Plaintiffs went to Oklahoma solely to comply with defendant's request and to advance a purpose for defendant's sole benefit. However, once plaintiffs entered the Oklahoma court they found that their own insurer was not as interested in preserving its subrogation claims as it was in seeking a courtroom in which to defeat plaintiffs' claims. Under section 143a of the Illinois Insurance Code (Ill. Rev. Stat. 1979, ch. 73, par. 755a) defendant would have been prohibited from originally litigating those claims in an Illinois courtroom because section 143a provides: "* * * that any dispute with respect to uninsured motorist coverage shall be submitted for arbitration * * *."

■■ Section 143a also provides that "* * * no policy insuring against loss resulting from liability imposed by * * * use of a motor vehicle shall be renewed or delivered or issued for delivery * * * unless coverage is

provided therein * * * for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and hit-and-run motor vehicles." It has been recognized that this provision expresses a strong public policy in favor of compensating the victim of an uninsured motorist. (*Roby v. Illinois Founders Insurance Co.* (1978), 57 Ill. App. 3d 89, 372 N.E.2d 1097.) The arbitration provision of section 143a is merely a recognition that public policy disfavors litigation between an insured and his insurer and that mandatory arbitration is the most effective way to accomplish the public policy of compensating the victims of uninsured motorists.

■■ As stated previously, this was a case in which Illinois was the appropriate forum, and Illinois public policy favors arbitration of such disputes. The only evidence before the court indicated that defendant's actions had the effect, if not the express purpose, of evading Illinois law and public policy. Plaintiffs cooperated with their insurer, only to have that insurer proceed to litigate against plaintiffs rather than protect its rights of subrogation. Under these circumstances defendant should be estopped from asserting the Oklahoma judgment because:

"* * * where a person has * * * acted or conducted himself in a particular manner * * * he cannot afterward assume a position inconsistent therewith to the prejudice of one who has acted in reliance on such conduct." (31 C.J.S. *Estoppel* §108 (1964).)

On the basis of the record before us it was error for the trial court to dismiss plaintiffs' complaint without permitting plaintiffs the opportunity to establish that defendant was estopped to assert the Oklahoma judgment in bar of plaintiffs' claims.

■■ ■ Although we would not impugn the jurisdiction or procedural processes of our Oklahoma brethren, we believe that defendant's deceptive actions in that forum must be recognized for what they were. If plaintiffs' allegations are true, then defendant attempted not only to avoid Illinois arbitration procedures but also to lead its insureds to believe that a settlement would be forthcoming. A long line of authority has recognized that when an insurance company leads an insured to believe that a settlement will be forthcoming it cannot suddenly shift its position and assert that a limitations period has expired. (*Kaskaskia Constructors v. Industrial Com.* (1975), 62 Ill. 2d 46, 338 N.E.2d 390; *Pope v. Industrial Com.* (1975), 61 Ill. 2d 532, 337 N.E.2d 713; *Molex, Inc. v. Industrial Com.* (1973), 53 Ill. 2d 560, 293 N.E.2d 585; see also 31 C.J.S. *Estoppel* §§108, 116 (1964); and Restatement of Contracts §467 (1932).) In view of this rule it was error for the trial court to dismiss the complaint without also allowing plaintiff to show that defendant's actions estopped it from asserting the policy limitation clause as a defense.

We would also note that the trial court erred in another respect which

would require reversal of this case. It ruled that the full-faith-and-credit effect of the Oklahoma judgment barred the present litigation. However, it has been recognized that "* * * 'the Full-Faith-and-Credit Clause, [U.S. Const., art. IV, §1]' is intended to establish as constitutional law the principles embodied in the common law doctrine of *res judicata*." (*Brownlee v. Western Chain Co.* (1977), 49 Ill. App. 3d 247, 250, 364 N.E.2d 926, 928.) In addition we note:

> "The doctrine of *res judicata* applies only to such matters as are necessary to a court's decision. It does not apply to matters which are unnecessary even though a court spoke to them, or might even have decided them." (*Hale v. Ault* (1980), 83 Ill. App. 3d 78, 83, 403 N.E.2d 635, 639.)

Accordingly, the trial court here was bound only by those matters which were necessary to the decision of the Oklahoma court. Although the Oklahoma court stated that plaintiffs had not complied with the policy limitation period, that statement was unnecessary to the court's decision. Even if plaintiffs had appealed the policy limitation finding, the Oklahoma court's decision would have been affirmed. That is because the policy limitation finding did not affect the determination that plaintiffs' failure to serve Hajjar within two years barred suit under Oklahoma's statute of limitations. (Okla. Stat., tit. 15, §216 (1971).) The statute-of-limitations determination was the only matter which was necessary to the Oklahoma court's decision, and that determination would not bar the case before us. The Oklahoma court's statement that plaintiffs had not complied with the policy limitation period was mere surplusage, and it was error for the trial court to rule that the present action was barred by *res judicata*.

The final issue which we must address is defendant's cross-appeal. Defendant argues that the trial court's dismissal of the original complaint on January 21, 1976, did not allow leave to file an amended complaint and was therefore an appealable order. Since it was not appealed, defendant contends that the trial court lost jurisdiction of the case. Our review of the record indicates otherwise because the trial court retains jurisdiction for 30 days (Ill. Rev. Stat. 1979, ch. 110, par. 50(5)) and on the 30th day, February 20, 1976, the court entered an order granting leave to file the amended complaint.

Reversed and remanded.

KASSERMAN, P. J., and WELCH, J., concur.