## SOMERS v. SOMERS et al.

A husband does not forfeit his homestead rights in the homestead, the legal title to which is in his wife's name, by abandoning his family, unless the abandonment is wrongful.

Where a wife wrongfully abandoned by her husband dies without conveying real property, the legal title to which the husband placed in her, the husband succeeds under the statute of descent to a third of the property.

Pol. Code, § 3217, requiring the spouse to join in the execution of a deed to a homestead, does not confer on the spouse any estate in the land, but merely burdens it with a condition by virtue of which the owner may not make a valid deed without the spouse joining therein.

To create an estoppel, there must have been some act or conduct by the party to be estopped which has in some manner misled the party in whose favor the estoppel is sought, and has caused him to part with something of value or do some other act relying on the conduct of the party to be estopped, creating a condition making it inequitable to allow the guilty party to claim what would otherwise be his legal rights.

Where a wife, having the legal title to real property, conveyed the same to her children after the husband had wrongfully abandoned the family, and the children knew the facts, the husband was not estopped from asserting as against the children that the deed was invalid, and that he was under the statute entitled to a third of the property.

Under Pol. Code, § 3217, declaring that a conveyance by the owner of the homestead is invalid unless the husband and wife, if the

owner is married, and the husband and wife reside in the state, sign the same joint instrument, a deed executed by a wife of a homestead while wrongfully abandoned by her husband, who remains a resident of the state, is a nullity.

Where a wife, who was wrongfully abandoned by her husband who had conveyed to her his homestead, entered on a government homestead and resided thereon for the period required by the federal land laws to enable her to acquire title thereto, she thereby abandoned the homestead rights of the land conveyed by her husband.

Where a husband, who conveyed to his wife his homestead, wrongfully abandoned her, and then entered other land as a government homestead, he abandoned all claims to the homestead conveyed to the wife, though he abandoned his claim to the government land.

A wife abandoned by her husband left the homestead, the legal title to which was in her, and entered on a government homestead, and resided thereon for the time required by the federal land laws to acquire title. Thereafter she returned to the former homestead. Prior to that time, all the children of the parties were of full age. One or two of the adult children lived with her on the original homestead, and they carried on the place to the time of her death. **Held,** that the Supreme Court could not declare as a matter of law that the trial court erroneously finding that the wife did not abandon the original homestead by entering on government land would have found that the wife acquired homestead interests in the original homestead on her return thereto, and the case must be remanded for a new trial as a "family" being a collective body of persons living in one house under one head, it did not appear who was the head of the family after their return to the old homestead.

(Opinion filed June 20, 1911.)

Appeal from Circuit Court, Lyman County. Hon. FRANK B. SMITH, Judge.

Action by Lafayette Somers against Peolia L. Somers and another. From a judgment for plaintiff, defendant appeal. Reversed.

*Preston & Wagner,* for appellants. *James Brown,* for respondent.

WHITING, J. This is an action by the plaintiff, the father of the defendants, seeking to quiet title, as against said defendants, in and to an undivided one-third interest in certain land in Brule county, and also seeking to be adjudged the holder of a life estate in the whole of said land; the plaintiff claiming as the heir of, and as the husband of, the former owner of said land, the

defendants claiming title as the grantees of such former owner. The cause was tried to the court without a jury. The court made findings of fact and conclusions of law in favor of the plaintiff, except that it found against his claim of life estate in said lands. Judgment entered upon such findings, and, a new trial having been denied, the defendants have appealed from such judgment and order denying a new trial.

No question is raised upon the pleadings. There is ample evidence to sustain the following facts found by the trial court: The plaintiff about the year 1881 made homestead entry of the land in question, and received patent thereon in 1883. In 1885, by full warranty deed, he conveyed said land to his wife, at which time plaintiff together with his wife and their minor children were living on said premises, among said minor children being the two defendants herein. Plaintiff and his wife lived upon said premises from their entry thereon until the year 1888, when, owing to a family quarrel, the plaintiff left said land, leaving his family thereon, and has never returned thereto or in any manner contributed to the support of his family. About the year 1899 the wife entered a homestead filing on another tract of land and made final proof thereon in the year 1904, remaining upon the land in controversy more or less all of the time after entry and up to final proof. After final proof she returned to and lived continuously upon the land in controversy. After plaintiff left his family, he lived by himself at different places in South Dakota, and for some 15 years prior to this suit lived in Chamberlain. In February, 1908, while the land in controversy was occupied by the mother of these defendants, she executed to them a warranty deed of said premises with the usual covenants therein, except with a covenant that the deed was not to be delivered or go into effect until her death. This deed was left in escrow to be delivered to the grantees upon the grantor's death, and, said grantor having died in March, 1909, the deed was then delivered to the grantees and they placed the same of record. This deed was not signed by the plaintiff, and he did not in any manner concur in the attempted conveyance of said premises to the defendants. During all the time hereinbefore mentioned, the plaintiff was the

husband of the party who executed the deed to the defendants, such marriage being dissolved only by the death of the wife.

The appellants complain of the refusal of the court to make certain further findings, and we are satisfied that the evidence fully warranted a finding to the effect that the desertion and abandonment of his family by the plaintiff was without any justifiable cause whatsoever, and the appellants were clearly entitled to such a finding if the same was material. The trial court found that the mother and children after their abandonment by plaintiff "continued to reside on the land in question as their homestead" until the death of the mother; and further found that the deed to defendants was executed "while the land was occupied as the family homestead." While the assignments of error are not as specific as they might be, yet we think they fairly raise the question of the correctness of these findings to the effect that the land in controversy was occupied as and remained the homestead of the mother until her death; and, if such findings are not supported by the evidence, a new trial must be granted.

It seems to be the theory of the appellants that a finding to the effect that the respondent's abandonment of the home and family was without cause would be material, in that it would support their contention that respondent was estopped, by his wrong-doing, from questioning the validity of the deed under which appellants claim title to the land. From the reading of their brief, it clearly appears that appellants have confounded the question of forfeiture of homestead right with that of estoppel to question validity of deed executed by spouse.

[1] There is no question but that the trial court rightly held respondent had forfeited all homestead rights in and to the premises; but, to support such holding, the court should have made a finding to the effect that the husband's abandonment was wrongful. Murphy v. Renner, 99 Minn. 348, 109 N. W. 593, 8 L. R. A. (N. S.) 565, 116 Am. St. Rep. 418; Coe v. Nelson (Tenn. Ch. App.) 59 S. W. 170; Dickman v. Birkhauser, 16 Neb. 686, 21 N. W. 396.

[2] Yet, if the wife had died without conveying the lands in question by deed or will, the respondent would, in spite of all his

wrongdoing, have succeeded under the statute to the one-third of her property, and he therefore so succeeds if the deed left by her was a nullity. The question presented is not whether respondent has forfeited his claim to a homestead in the land in question, but whether he is estopped from alleging the invalidity of his wife's deed, such invalidity being based on lack of his signature.

[3] It must be remembered that the statute of this state (section 3217, Rev. Pol. Code), requiring the spouse to join in the execution of a deed to a homestead, does not in any manner confer upon such spouse any estate in said land (21 Cyc. 460, State. v. Toomey, 27 S. D. ———, 129 N. W. 563, but simply burdens this tract of land with a quality or condition by virtue of which it is impossible for the owner to make a valid deed without the spouse joining in the execution thereof.

[4, 5] To create an estoppel, there must have been some act or conduct upon the part of the party to be estopped, which has in some manner misled the party in whose favor the estoppel is sought and has caused such party to part with something of value or do some other act relying upon the conduct of the party to be estopped, thus creating a condition that would make it inequitable to allow the guilty party to claim what would otherwise be his legal rights  To illustrate, if A. had been seeking to buy the premises in question, and respondent, knowing the same, had by word or act allowed A. to believe that he had no interest in said premises and that the owner thereof was a single woman, and A., relying upon such acts or representations, took a deed to said premises executed by the wife only, the respondent might be held estopped from questioning the validity of the deed. It cannot, however, be claimed that the grantees in this deed were in any way misled into taking a deed executed by their mother only, relying upon the fact that she was a single person, because it is undisputed that they were fully advised of all the facts herein. It will therefore be seen that, no matter how wrongful the conduct of the plaintiff in abandoning his home, a finding in relation thereto is immaterial in this case, in so far as any question of estoppel is concerned.

Appellants, however, contend that, inasmuch as the respondent had abandoned his home and family, and this abandonment was, as they claim and as the evidence clearly shows, wrongful and sufficient to effect a forfeiture of any homestead right he otherwise would have had in the homestead owned and possessed by his wife, she had the absolute right to convey same without his joining in the execution of the deed.

[6] Section 3217, supra, reads: "A conveyance or incumbrance by the owner of such homestead shall be of no validity unless the husband and wife, if the owner is married, and both husband and wife are residents of this state, concur in and sign the same joint instrument, except as provided in the next two sections." It has been repeatedly held by this court that, under this statute, a deed, not executed in compliance therewith, is an absolute nullity. The respondent was a resident of this state at the time the deed was executed, and there is no claim that there was anything bringing this case under the exceptions referred to in said section. It might have been an act of wisdom for the Legislature to have provided that the owner could convey the homestead without the spouse joining in such conveyance whenever such spouse had wrongfully abandoned such homestead, but it is not within our power to read such an additional exception to section 3217 into the statutes, and we are bound by the acts of the lawmakers. The case of Murphy v. Renner, supra, is in principle exactly like this one, with the exception that the wrongdoing of the spouse in that case was, if possible, greater than in this case, and we would refer to the opinion therein for a clear and full discussion of all the questions already discussed herein.

It thus becomes necessary to determine whether or not the land in question was the homestead of the wife at the time she executed the deed to appellants. If it was, the judgment of the trial court is clearly correct; but, if not, the deed to appellants was valid and the judgment wrong. It appears clearly from the findings of fact as made that the trial court found that the wife of respondent never lost her homestead in and to the lands in suit while she was living upon her government homestead. In this

we hold the trial court was in error. In considering this question we must consider the rights of the mother and wife in and to the two tracts of land as against her creditors.

[7] When the wife entered upon her government homestead and resided thereon for the purpose of acquiring same under the federal land laws, she of necessity abandoned her homestead rights in the land involved in this suit. By entry upon the other tract of land as a government homestead, the prior home ceased to be a homestead and became subject to the debts of the owner thereof. In Donaldson v. Lamprey, 29 Minn. 18, 11 N. W. 119, it was said: "We are of the opinion that the evidence in this case shows clearly that the plaintiffs had prior to this execution sale removed from their former home in Dakota county and acquired a new domicile and home upon their government homestead in the county of Sibley, which plaintiff Robert S. Donaldson had taken and setttled upon under the laws of the United States commonly known as the soldiers' and sailors' homestead acts of April 4, 1872, c. 85, 17 Stat. 49, and Act June 8, 1872, c. 338, 17 Stat. 333. These are entitled 'Acts to enable honorably discharged soldiers and sailors to acquire homesteads on the public lands of the United States.' They require the claimant to make an affidavit that the entry is made for the purpose of actual settlement and cultivation. They provide that no certificate or patent shall be issued therefor without proof that the party has resided upon, cultivated, and improved the same for a certain period of time." The wife of respondent was required to make similar affidavit and proof in connection with her entry upon and final proof of her government homestead. When the wife was left in charge of the minor children through the wrongful abandonment of them by the plaintiff, she became the head of the family, and, as such, had full power and authority to select another home acquiring a homestead interest therein, and this is what she certainly did. Kenley v. Hudelson, 99 Ill. 493, 31 Am. St. Rep. 31; Nash v. Norment, 5 Mo. App. 545.

[8] If it were possible for the respondent to assert any homestead rights not consistent with the selection made by his

wife when she entered upon the government land, it must be held that he himself abandoned all claim that the land in suit was a homestead, for the reason that in the year 1901 he also entered upon another tract of land as a government homestead although he afterwards abandoned the same. We think it beyond all question that, while the wife was living upon her government land, she had the absolute power to have made a good and valid deed of conveyance of the land involved in this suit, without her husband uniting in the execution of the said deed, and that this land was not exempt from levy for their debts.

[9] Did she acquire a homestead interest in the land in suit upon her return thereto? This is a question that could not have been passed upon by the trial court, inasmuch as it erroneously found that the wife never lost her homestead interest therein while upon her government homestead. It appears undisputed that the youngest child reached majority prior to the time when the mother made final proof on her homestead entry. Upon her return to the land in suit, did the mother become the head of the family, and as such entitled to claim a homestead in this land? The evidence shows that one or both of the defendants lived with her on this land at all times until her death. An older brother testified that "they [the defendants] carried on and worked this place from the time I left down to the time of my mother's death." The defendant P. L. Somers testified: "I remember the fact of my mother entering a homestead down there on land in section 26 and 27-103-72, in April, 1899. Mother lived on that homestead five years. During that time me and my wife and Fred lived on the home farm, the one in controversy. I remember when mother proved up on that homestead, but not exactly the date. After she proved up, she came back home to the old place where we lived. She then lived with us boys there, and continued to live there with me until the time of her death, a year ago this spring in March. I was with her after she returned and came back on the farm. I continued till about two years ago. Before that I went across the river. Fred remained and mother lived with him up to the time of her death, and father was never back there." And, in speaking of the time his mother was on her claim, he further tes-

tified: "During this time my mother held her claim as a home-
stead that was about two miles from my old home place. No;
mother didn't do any work at all at that time. She was holding
the claim. She stayed around the house. My wife did the work.
She stayed on the claim, and would come and visit us off and on
and go back to the claim. I think she lived on it five years, and
came back about in about 1904, and then lived on the old home the
same as she did before she left, and Fred stayed there with her
all the time, and I stayed until about a year before this deed was
made." The defendant Fred Somers testified: "I remember
when my mother lived on the homestead that she took in 1899.
I don't remember how long she lived on that homestead. I think
she made either five or seven years proof. She did not stay on
that homestead continuously all the time. She was back and
forth there enough to prove up. She had a house on that home-
stead and a little furniture in the house. She had a stove, bed,
she slept there and lived there. While she was over there, Lime
and his wife lived on the old place after he got married, and then
Lime and I carried on the place, looked after the farm, and
farmed it, and managed it. Lime generally collected the pro-
ceeds of the crop. We raised hogs and corn, and we hauled
them to town, and he would get the money. Lime and I were
working there together. Three years ago this spring, I think
Lime went across the river in Lyman county. At that time and
since, Lime and I were working together. We have stock to-
gether now. After mother proved up on the homestead there,
she moved back on the home place and lived with us boys. After
Lime left, Lime and his wife went across the river. I kept house
there. I stayed there since and had a hired man and a hired girl,
and mother stayed there with me up to the time of her death."
Can this court hold that with such evidence in the record (though
there was some that might be construed as showing the mother
to be the head of the family) the trial court would have found this
land to be the mother's homestead, when deed to appellants was
executed, if he had rightfully found that she had previsously lost
her homestead rights therein? We cannot so hold. A family is
"the collective body of persons who live in one house, under one

head or manager." Who was the head or manager in year 1908 at the time the deed to defendants was executed? Was it not Fred Somers rather than his mother? The cause must be remanded to the trial court that it may determine the question of homestead in the light of this court's views as to the effect of the loss of homestead in this land by the taking of the government land.

The judgment and order denying a new trial are reversed.