KRAFT, Respondent, v. CORSON COUNTY, et al, Appellants

(34 N. W.2d 838.)

(File No. 8992. Opinion filed December 2, 1948)

Rehearing Denied Feb. 9, 1949.

**Morrison & Skaug,** of Mobridge, and **Stanley R. Voas,** of McIntosh, for Plaintiff and Respondent.

**Stanley R. Voas,** of McIntosh, for Defendant, Corson County.

**W. M. Potts,** of Mobridge, and **Byron S. Payne,** of Pierre, for C. E. Lewis and Ellis M. Lewis, Defendants and Appellants.

RUDOLPH, J. Subsequent to the decision in Kraft v. Corson County et al., 71 S. D. 382, 24 N. W.2d 643, there was a new trial of the case which resulted in judgment for plaintiff and defendants have again appealed.

We did not explicitly determine in the prior appeal whether the defendant C. E. Lewis was estopped from asserting the invalidity of the tax title under which plaintiff claimed. The facts as now presented require a determination of this question. These facts are: C. E. Lewis purchased the land in dispute in 1924 under a contract whereby he was to deliver to the seller one-half of the crop to apply upon the purchase price. He made no payment other than the delivery of the one-half share of the crop for several years and never paid any taxes assessed against the land. On December 13, 1926 the land was sold to Corson County for delinquent taxes. In 1932 Corson County took a tax deed, and C. E. Lewis rented the land from the county for the year 1932. Thereafter he surrendered possession to the county and the county leased the land to other parties until it sold one quarter section to the plaintiff in 1941 and the remaining quarter in 1943. Immediately upon purchasing this land the plaintiff went into possession and erected substantial improvements upon the quarter section first purchased. After purchasing the remaining quarter he built fences thereon and generally enclosed the entire premises as one farm, erected more improvements and operated the place as a single unit. During all of the time that plaintiff has been in possession of the land and at all the time here

involved, C. E. Lewis lived in close proximity thereto and knew of its use and sale by the county and of its use and improvement by the plaintiff. It was not until the commencement of this action in 1944 that C. E. Lewis ever asserted any right or interest in the land.

■ While it might be that there was no intention on the part of C. E. Lewis to mislead or decieve the plaintiff, nevertheless, his acts in failing to pay taxes on the land for twenty years, in surrendering possession to the county and in standing by and permitting plaintiff to expend time and money in improvements on the premises, constituted negligence such as to amount to a constructive fraud upon the plaintiff within the meaning of the rule announced in our former opinion, and the cases therein cited. We hold, therefore, that C. E. Lewis is estopped by his laches to assert the invalidity of the tax title. In view of the fact that plaintiff fenced the seocnd quarter purchased and included it with the first quarter and thereafter improved and operated the place as one farm, we hold that the estoppel applies to both quarter sections.

■ In our prior opinion we held, under the facts then presented, that Ellis M. Lewis never surrendered possession of the property to anyone, had no knowledge of the possession or improvement of the property and was not estopped to assert the invalidity of the tax title. On the retrial of the case the trial court found that Ellis M. Lewis has no individual or personal interest in the land but merely permitted his name to be used in behalf of C. E. Lewis. The evidence upon which this determination is based is as follows: Ellis M. Lewis is a son of C. E. Lewis. Ellis left South Dakota in the year 1930, and during the time here involved, lived in Minnesota. The attorney for C. E. Lewis, shortly after the service of the complaint in this action, wrote a letter to G. P. Smith who had received a quitclaim deed from the bank from which 'C. E. Lewis had purchased the land, and offered Smith $25 for a quitclaim deed to C. E. Lewis. Smith signed such a deed and on April 27, 1944, sent it to a Mobridge bank with instructions to deliver it to

C. E. Lewis upon the payment of $25. On June 9, 1944 the attorney for C. E. Lewis whote Smith as follows:

"It appears now that it will be advisable that this deed be issued naming some other party than C. E. Lewis as grantee. Will you kindly write at the bottom of this letter or by separate letter, giving me authority to insert some other name than that of C. E. Lewis as grantee."

On June 13, Smith authorized the attorney to "insert any name you wish as grantee." The name of Ellis M. Lewis was inserted in the deed, and the deed was recorded on June 17, 1944. The record contains no letter from the attorney to Ellis advising him of the insertion of his name in the deed, but there is a letter from Ellis to the attorney dated June 21, 1944, several days after the deed was recorded, wherein Ellis states: "I am perfectly willing to have you use my name on the land deal you wrote about if I can help Dad a little by doing so. * * * Let me know how things come out." It appears from the examination of Ellis that he knew little or nothing about these proceedings, and that they were being conducted by the attorney for the sole benefit of C. E. Lewis. Ellis was asked this question, "Then in this case, what you are doing in here was this, you have allowed them to use your name in this business to protect, if you could, your father, or any interest that he might have in these premises, that is right, isn't it?" and he answered, "That is right." A further recital of the evidence is unnecessary. We have carefully considered the entire record and conclude that it amply justifies the trial court in determining that Ellis has no individual or personal interest in the land.

■ Under the circumstances here presented we are convinced that this quitclaim deed taken in the name of Ellis for the benefit of his father, cannot aid the father in his claim to this land. In his answer in this case, C. E. Lewis alleged the entire ownership of this land to be in him. In its finding No. 3, the trial court found with reference to payments by C. E. Lewis to the bank from which he purchased the land, "In the year 1932 said Lewis delivered to said bank storage receipts for grain produced on said land

which he claims covered the balance of the payments due." It appears, therefore, that C. E. Lewis was claiming the entire ownership of this land, apart from any interest conveyed by the quitclaim deed. While claiming such ownership he stood by and permitted the estoppel to become effective. To permit him to thereafter acquire for a nominal sum some purported interest which he has claimed is nonexistent, and thereby defeat the claims of this plaintiff who in reliance upon the acts of C. E. Lewis has spent money and time on the property in an attempt to establish a home for himself and his family would be neither equitable or just. Each case of estoppel must in the nature of things stand on its own facts. The doctrine of estoppel is founded upon the principles of morality and fair dealing and is intended to subserve the ends of justice. Security State Bank v. Gannon et al., 39 S. D. 232, 163 N. W. 1040. To permit C. E. Lewis to defeat the claims of this plaintiff by the means employed would not in our opinion subserve the ends of justice.

The judgment appealed from is affirmed.

SICKEL and HAYES, JJ., concur.

ROBERTS, P. J., dissents.

SMITH, J. I concur in the opinion as to the first quarter section purchased by the plaintiff from the county. I dissent from the result reached as to the second quarter section purchased.