CHLEBOUN, Appellant v. VARILEK, et al., Respondents

(136 N.W.2d 348)

(File No. 10188. Opinion filed July 21, 1965)

**G. F. Johnson,** Gregory, **Maule, Maule & Day,** Winner, for plaintiff and appellant.

No appearance for defendants and respondents.

RENTTO, J.   This is an action to determine adverse claims to real estate.

Plaintiff alleges that she is the owner in fee simple and entitled to the immediate possession of a described farm in Tripp County, South Dakota. Defendants answer that the husband of the plaintiff, acting as her agent and with her full knowledge and consent leased the property to them for a period of five years. They further assert that because of her conduct she is estopped to deny the lease. The jury returned a verdict finding

in favor of the defendants and against the plaintiff on all of the issues. Plaintiff appeals from the judgment of dismissal entered on such verdict.

On June 9, 1962 the husband of the plaintiff and all of the defendants, they being a husband, his wife, and their eldest son, executed a written agreement. It designated plaintiff's husband as the landlord and the defendants as the operator. After stating that the landowner was the owner of the premises involved, including the buildings and improvements thereon, and certain described livestock and farm machinery the agreement goes on to state that the parties are entering into a joint venture for the operation of the farm and ranch unit involved. It then provides in detail concerning their contributions to and receipts from the joint operation of the premises. The agreement is for the term of five years commencing March 1, 1962. The landlord reserved for the use of his family a dwelling house on the premises and the operator was given the use of the tenant house thereon for his living quarters.

Plaintiff's principal complaint on this appeal is that the evidence is insufficient to sustain the verdict. In our review we must accept the evidence most favorable to the verdict.

When the agreement was entered into plaintiff was 82 years of age and her husband 83. Both were suffering the physical infirmities common to persons of their age group because of which they had been unable to operate the farm for some time without help. It had been their home and means of livelihood throughout their long married life during which both of them worked together in its operation. The year before the lease period in question, August Severin had assisted them in their farming and ranching activities. The written agreement that he operated under was identical with the one given the defendants. It too was executed by plaintiff's husband and stated that he was the owner of the premises. However, its term was one year.

The Severin lease expired with no new agreement with him and apparently no arrangements made with anyone else to take over. In these circumstances the defendant, Ed Varilek, was directed to the Chleboun farm by the Employment Service at

Winner. Severin was still living in the tenant house, but did not work on the place. Varilek, with his son Robert and Chleboun, in the presence of the plaintiff, discussed the possibility of Varilek assisting them in the operation of the farm. The Varileks in the course of this discussion read over the Severin agreement. They observed that it was for a one-year term and inquired if the Chlebouns would consider making it for three or five years. To this Chleboun replied "No, we make it for one year with the privilege of renewing every year."

The next day the Varileks, including Mrs. Varilek, returned to the farm and further discussions were had concerning the agreement and especially about the Chlebouns assisting the Varileks financially to acquire some livestock to keep on the place while they operated it. Mrs. Varilek indicated her assent to moving to the farm, but nothing was said in these conversations, in the presence of the plaintiff, as to the duration of the contract. Two days later, about March 17, 1962, Varilek returned to the farm with his tractor and farmhand and began doing chores on the farm. He lived with the Chlebouns in the dwelling house reserved to the landlord until his family moved to the farm after school was out. The family consisted of Mr. and Mrs. Varilek and their eight children.

While living with the Chlebouns, Varilek had a conversation with Chleboun in the presence of the plaintiff concerning the contract, but "there wasn't too much said as to the duration at that time." A little later while having breakfast with the Chlebouns they discussed the matter of entering into a written contract. He was asked by Mr. Chleboun what the advantage would be in a three or five-year contract. To this he replied "Well, if we had a contract for longer period of time the kids and the missus and I would run it like it was our own place and it would be beneficial for him and us both." To this Chleboun replied "they would talk it over."

Plaintiff admitted that her husband pretty much ran their farming business. She indicated that they generally talked things over, but that he made the decisions and put on the land the people that he wanted on. This seems to have been their long

continued practice. She further admitted that in 1962 he talked it over with her about Mr. and Mrs. Ed Varilek.

Concerning the lease in issue the record next shows that Chleboun took a copy of the Severin agreement to an insurance and real estate office in Winner and had the new lease typed by a stenographer there, with the principal change being to extend the term from one to five years. It was typed in accordance with instructions received from Mr. Chleboun. He admitted that it embodied the arrangements they had orally agreed on in their previous discussions and that he and his wife had discussed entering into this written agreement.

Varilek stated that on an occasion before the lease was signed Chleboun told him that plaintiff was the owner of the premises, but coupled it with the statement that "he was the manager of the whole deal." About three weeks after the agreement was signed Mrs. Varilek visited the plaintiff in the hospital in Winner where she was a patient. In the course of their conversations Mrs. Varilek told the plaintiff that the lease which they had signed was for five years. To this plaintiff said "she was glad they had somebody on the place that liked the place." However, during the course of their operation of the premises differences arose between Chleboun and Varilek resulting in an action instituted by Chleboun early in 1963 for an accounting in their joint venture and its termination, which is pending and undetermined. The complaint in this action was filed November 16, 1963. The notice to quit, served on the defendants, is dated January 13, 1964 directing them to vacate the premises on March 1, 1964.

■ ■ The court submitted to the jury the defenses of agency and equitable estoppel. Defendants do not contend that Chleboun had written authority to lease the premises. The agency relied on by them is of the ostensible type provided for in SDC 3.0203. That section states "Ostensible authority is such as a principal intentionally, or by want of ordinary care, causes or allows a third person to believe the agent to possess." This type of agency is grounded on the elements of estoppel. Hartford Accident & Indemnity Co. v. Bear Butte Valley Bank,

63 S.D. 262, 257 N.W. 642. See also Restatement of Law, Agency, 2d § 8B.

As stated in that case "ostensible agency is no agency at all; it is in reality based entirely upon an estoppel." The acts of an ostensible agent bind the principal not because of an agency, but because the principal will not be permitted to deny his authority. In this connection plaintiff directs our attention to SDC 51.1401 which requires that when an estate in real property, other than an estate at will or for a term not exceeding one year, is transferred by an agent his authority must be in writing.

In the cited case the court was dealing with a negotiable instrument endorsed by an agent whose authority was not in writing. It was faced with a statute which provided that the signature of a party on such instrument may be made by an agent duly authorized in writing. The court there held that such requirement would not deprive an indorsee from setting up the defense of an estoppel. Accordingly, we feel compelled to hold that SDC 51.1401 does not prevent the defendants from relying on an estoppel to establish their defense of agency. 37 C.J.S. Frauds, Statute of § 216.

■ In the early case of Tolerton & Stetson v. Casperson, 7 S.D. 206, 63 N.W. 908, this court quoting from the Supreme Court of the United States in Dickerson v. Colgrove, 100 U.S. 587, 25 L.Ed. 618, set out the principles of equitable estoppel as follows:

"The vital principal is that he who, by his language or conduct, leads another to do what he would not otherwise have done, shall not subject such person to loss or injury by disappointing the expectations upon which he acted. Such a change of position is strictly forbidden. It involves fraud and falsehood, and the law abhors both. This remedy is always so applied as to promote the ends of justice. It is available only for protection, and cannot be used as a weapon of assault. It accomplishes that which ought to be done between man and man, and is not permitted to go beyond this limit."

This statement was more recently quoted with approval by us in Reichert v. Reichert, 77 S.D. 258, 90 N.W.2d 403. Viewing this record most favorably to the verdict, including the inferences to be drawn therefrom, we think the jury could properly find that plaintiff's conduct was such as to reasonably induce in Varilek the belief that her husband had authority to execute the lease in question.

Varilek admitted that he was in better financial position at the time of the trial, which began on February 10, 1964, than he was when he went onto the place. Plaintiff seizes on this to urge that he had suffered no injury or loss by reason of the conduct of the plaintiff on which he predicates an estoppel. This we think misses the point. Plaintiff admitted that she authorized her husband to execute a lease for one year. Her conduct led Varilek to believe that he had authority to execute a lease for a five-year period. On the strength of this longer term lease he obtained credit and bought farm machinery. With a one-year lease Varilek would not have incurred these and other financial obligations which he assumed under the belief that his farming operations were stabilized for a five-year period.

SDC 3.0303 states: "A principal is bound by acts of his agent under ostensible authority, to those persons only who have in good faith, and without negligence, incurred a liability or parted with value upon the faith thereof." Plaintiff argues that Varilek did not deal with her agent in good faith. This is predicated on the fact that he was an elderly man and not in good health. There is nothing in the record to indicate that Varilek's conduct in entering into the transaction was anything other than prudent and proper. That Varilek thereafter in operating the farm might have violated the provisions of the agreement as claimed by the plaintiff would have no bearing on his good faith in entering into the agreement. Under this record we feel it was for the jury to decide whether plaintiff was estopped to deny the authority of her husband to enter into this lease.

Plaintiff assigns other errors in the giving of and refusal to give requested instructions. We find no error in these prejudicial to the plaintiff.

Affirmed.

All the Judges concur.