TERESA R. ZAAYER *et al.*, Plaintiffs, *v.* MICHAEL D. AXEL *et al.*, Defendants-Appellees.—(TOMMIE J. EDWARDS, Plaintiff-Appellant.)

Fourth District    No. 17169

Opinion filed December 10, 1981.

Gregory Lietz, of Hutton, Laury, Hesser & Lietz, of Danville, for appellant.

Moore, Nelson & Stipp, of Hoopeston (William E. Nelson, of counsel), for appellees.

PRESIDING JUSTICE TRAPP delivered the opinion of the court:

Plaintiff, Tommie Edwards, appeals the order of the trial court which dismissed her complaint for personal injuries on defendants' motion pursuant to section 48(1)(e) of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 48(1)(e)) for failure to bring action within two years after the date of injury as required by section 14 of "An Act in regard to limitations" (Ill. Rev. Stat. 1979, ch. 83, par. 15).

The complaint was filed approximately two years and 10 months after the injury. In opposition to defendants' motion, plaintiff filed an affidavit alleging that defendants' insurance agent lulled plaintiff into a false sense of security that the claim would be paid without suit, and sought to estop the defendants from asserting the statute of limitations as a bar to her action. Defendants filed no counteraffidavit in opposition,

but after a hearing on defendants' motion, plaintiff's complaint was dismissed with prejudice. This appeal was brought by plaintiff under Supreme Court Rule 304(a) (73 Ill. 2d R. 304(a)).

She contends that due to the conduct of the defendants' agent during the two-year period, plaintiff was led to believe that her claim would be settled and that the defendants should be estopped to raise the statute of limitations. Defendants argue that there was an insufficient inducement for plaintiff to forego suit, and that even if there was an inducement, it ended six months prior to the running of the statute of limitations.

Since defendants filed no counteraffidavit prior to the hearing on their motion to dismiss, the facts stated in plaintiff's affidavit will be taken as true. (*Devlin v. Wantroba* (1966), 72 Ill. App. 2d 383, 385, 218 N.E.2d 496, 497; *Suing v. Catton* (1970), 118 Ill. App. 2d 468, 470, 254 N.E.2d 806, 808.) Likewise, on appeal all facts well pleaded in the complaint will be taken as true. *Haley v. Merit Chevrolet, Inc.* (1966), 67 Ill. App. 2d 19, 214 N.E.2d 347.

On March 14, 1978, plaintiff was a passenger in a car driven by her daughter, Teresa Zaayer. They had stopped for a school bus discharging students. Plaintiff's vehicle was struck in the rear by Michael Axel, codefendant and agent of defendant Paul Casket Company, Inc. In the affidavit filed by plaintiff, she alleged that on April 3, 1978, the claims adjuster for defendants' insurance carrier, Continental Insurance Co., Robert Lucas, contacted her about the collision and the injury, requesting plaintiff to complete forms relating to the damaged automobile. They were completed by plaintiff and her husband, owner of the vehicle, and returned to the insurance company. On April 24, 1978, plaintiff received a letter from Continental Insurance Co. and a draft in the amount of $1,376 for damage to the automobile. In the letter to plaintiff was a note written by agent Lucas which stated: "I will wait until Mrs. Edwards is released from Dr. McAskill and then I will issue a draft when we receive the final bill." From March to September of 1978, agent Lucas called plaintiff every month to inquire as to her condition. From September 1978 to September 1979, the adjuster called approximately every one to three months. During these conversations, Lucas advised plaintiff to send all of her medical bills to him, and on occasion discussed the possibility of settlement, which plaintiff refused to do until she was released from the doctor's care. In a phone conversation in December of 1978, Lucas offered $500 in settlement in addition to paying all of plaintiff's medical bills. The last direct communication between the plaintiff and the defendants' insurance company occurred in September of 1979, six months prior to the running of the statute of limitations. Plaintiff, in her affidavit, alleges that all medical bills she received were sent to the defendants' insurance company, and argues that while no direct communication oc-

curred for the final six-month period, her actions in forwarding these bills during the final period is sufficient continued communication to support her estoppel claim. The record does not disclose any rejection of the bills by Lucas.

Plaintiff's personal injury claim was barred by the statute of limitations on March 14, 1980, and she was released from Dr. McAskill's care in October of 1980. In October, plaintiff called agent Lucas to discuss settlement, but he informed her, for the first time, that her claim was barred by the statute of limitations. Official rejection of plaintiff's claim came from the company in December of 1980, and plaintiff's suit was filed on January 14, 1981.

Plaintiff, in her arguments before this court, urges that defendants be estopped from claiming the bar of limitations, since defendants' insurance agent lulled her into a false sense of security that her claim would be paid. Defendants maintain that there was insufficient conduct to create an inducement for delay, and even if there was, the inducement for plaintiff's forbearance of suit ended in September of 1979, the date the last direct communication between plaintiff and defendant occurred.

The trial court's written order found that:

> "The conduct of the defendants or of the agent of their liability insurance carrier as a matter of law was not such as to lull the plaintiff, Tommie J. Edwards, into a false sense of security and thereby to cause her to delay or waive the assertions of her rights to her damages."

The issue confronting us in the resolution of plaintiff's claim revolves upon an inquiry into the conduct of the defendants' insurance company and the reasonableness of plaintiff's belief that suit would be unnecessary to vindicate her rights. In *Dickirson v. Pacific Mutual Life Insurance Co.* (1925), 319 Ill. 311, 150 N.E. 256, the supreme court, in considering the issue before us, stated the standard for determining whether the doctrine of estoppel would prevent a party from raising the statute of limitations as:

> "The rule in this State and elsewhere, pertaining to waiver in a case of this kind, requires that the conduct of the party against whom such a waiver is claimed be such as to cause the other party to change his position by lulling him into a false security, thereby causing him to delay or waive the assertion of his rights to his damage. Negotiations for an adjustment of a claim which do not so justify the claimant in delaying action cannot estop the insurer from insisting upon a strict compliance with the conditions of the limitation. It is necessary and proper that claims of this character be investigated, and the fact that the insurer negotiates with the claimant is in nowise conduct amounting to a waiver by estoppel

unless there is contained in the negotiation that which is calculated to lull the claimant into a false security. [Citations.]" (319 Ill. 311, 318, 150 N.E. 256, 259.)

In *Dickirson*, the plaintiff was injured by a board which hit his left eye allegedly resulting in a cataract. The plaintiff submitted a claim to his insurance company, which refused to make payment contending that the cause of the cataract was senility and not the trauma. Plaintiff brought suit against the insurance company after the statute of limitations had run. The supreme court ruled that plaintiff's suit was barred, and that the defendant's conduct did not amount to conduct sufficient to create an estoppel. In *Dickirson*, the insurance company had been consistent in the refusal to recognize the validity of plaintiff's claim, made no offers or payments towards settlement, made no statements or other representations, and in short did nothing which could reasonably be interpreted as lulling the plaintiff into a false sense of security.

Conduct sufficient to create a reasonable belief in the plaintiff that a claim will be paid may consist of numerous factors: (1) concession of liability by the insurer (*Kinsey v. Thompson* (1963), 44 Ill. App. 2d 304, 307, 194 N.E.2d 565, 567; *Wells v. Lueber* (1976), 43 Ill. App. 3d 973, 974, 358 N.E.2d 293, 294); (2) conduct or statements by the insurer encouraging delay (*Jackson v. Hoover* (1974), 24 Ill. App. 3d 358, 363, 321 N.E.2d 348, 352); (3) payments by the insurer during the period of negotiations (*Flagler v. Wessman* (1970), 130 Ill. App. 2d 491, 493-94, 263 N.E.2d 630, 631-32); and (4) plaintiff's awareness of the statute of limitations, its running and effect, and whether plaintiff has retained counsel to protect plaintiff's interests (*Hurtt v. Davidson* (1980), 84 Ill. App. 3d 681, 683, 406 N.E.2d 90, 92; *D'Urso v. Wildheim* (1976), 37 Ill. App. 3d 835, 839, 347 N.E.2d 463, 466). This list is not exhaustive, but merely enumerates the factual circumstances previously considered by the courts of this State in evaluating claims of estoppel to plead the statute of limitations. See *Hurtt*.

In *Kinsey*, this court was confronted with a similar claim that the defendant should be estopped to plead the statute of limitations. In that case, plaintiff's claim for personal injuries was negotiated with the plaintiff's attorney during the two-year period before the statute of limitations and after the statute had run. The adjuster conducted numerous settlement negotiations with plaintiff, and conceded that settlement must contemplate a substantial payment. The adjuster, during this period, had requested tax returns, other proof of loss of earnings, and had arranged for plaintiff to be examined by a physician of the insurance company's choice. Liability was conceded by the adjuster, with the only dispute being the amount to be paid. This court held that in view of the totality of representations made by the defendant's insurer, *i.e.*, that liability was

conceded, negotiations continued right up to and after the two-year period, and the only dispute being as to the amount of final settlement, sufficient evidence was presented to raise a question of fact as to whether the defendant's agent lulled plaintiff into a false sense of security. 44 Ill. App. 2d 304, 307, 194 N.E.2d 565, 567.

As in *Kinsey,* defendants' insurance agent Lucas began settlement negotiations with plaintiff immediately after the accident until six months prior to the expiration of the statute of limitations. While there was no express admission of liability, the payments were made not simply for plaintiff's medical expenses, which do not constitute an admission of liability (Ill. Rev. Stat. 1979, ch. 51, par. 61), but defendants' agent also submitted a draft to cover property damage to plaintiff's automobile. Also, considering the facts as alleged in the affidavit regarding the circumstances surrounding the accident, the conclusion that defendants were negligent and hence liable seems inescapable. Plaintiff was also informed by the defendants' agent that settlement would await plaintiff's release from her physician's care which release ultimately occurred after the statute of limitations expired. The settlement negotiations continued until September of 1979, six months prior to the statute of limitations expiration, and during these negotiations settlement was discussed numerous times. In a telephone conversation in December of 1978, Lucas offered to pay all of plaintiff's medical bills when plaintiff was released and offered $500 in settlement.

Defendants argue that during a period of six months prior to the expiration of two years, there was no direct communication between plaintiff and Lucas, thus negating a conclusion that plaintiff was lulled into a false sense of security, and further argues that there was a reasonable time for filing her complaint.

Plaintiff's affidavit, however, alleges that during this period she continued to submit medical bills to the insurer as she had been instructed by Lucas. While there is no allegation that the bills were paid, it is alleged that Lucas had stated that it was not the policy to make separate payments but that the bills would be paid upon her discharge from treatment. It was further alleged that at no time did Lucas alter his instructions about transmitting the bills. Defendants argue that this delay negates any conclusion that plaintiff was lulled into a false security, since the inducement for delay ended in sufficient time for filing suit.

Defendants cite *Reat v. Illinois Central R.R. Co.* (1964), 47 Ill. App. 2d 267, 197 N.E.2d 860, in support of their argument. In *Reat,* plaintiff brought an action under the Federal Employer's Liability Act for injuries sustained on August 1, 1955, during the course of employment. Plaintiff alleged that on August 1, 1955, he was injured by the negligence of a fellow employee and was sent to defendant's doctor for examination. The

doctor examined plaintiff, but told him he sustained no injury and returned plaintiff to the job. Plaintiff alleged that the doctor knew he had injuries but concealed it from him. Plaintiff worked for his employer until May 2, 1958, when he was discharged from employment because he was unable to work. On June 13, 1958, plaintiff discovered that the original injury did, in fact, cause severe damage and as a result he had to have his leg amputated. The statute of limitations expired on July 31, 1958, but plaintiff did not file suit until July 26, 1960. At no time did the employer ask plaintiff to refrain from filing suit, conduct negotiations, or in any way acknowledge the correctness of his claim. The court held that neither the employer's silence nor the doctor's negligence was conduct which would estop the defendant from claiming the bar of the statute of limitations. The court stated that even if the defendant's conduct could be construed to amount to an estoppel situation, the inducement for not filing suit ended on either May 2, 1958 (the day plaintiff was fired), or June 13, 1958 (the day plaintiff learned the extent of his injuries). (47 Ill. App. 2d 267, 277, 197 N.E.2d 860, 866.) While defendants are correct in their assessment of the holding of the *Reat* case, that case is inapposite to the factual circumstances present here.

Here, there is nothing to indicate that the defendants revoked the prior inducement until October of 1980, five months after the statute of limitations had run. In *Reat*, it was apparent to the plaintiff that the inducement had ceased prior to the expiration of the statute of limitations. When defendants' agent had previously made settlement offers, paid sums in settlement of the damages, and otherwise encourages an amicable settlement with plaintiff, the defendant will not be allowed to use the statute of limitations to shield his liability, absent an affirmative indication that the settlement offers are revoked in sufficient time for plaintiff to file suit. Compare *Salloum Foods & Liquor, Inc. v. Parliament Insurance Co.* (1979), 69 Ill. App. 3d 422, 388 N.E.2d 23; *Florsheim v. Travelers Indemnity Co.* (1979), 75 Ill. App. 3d 298, 393 N.E.2d 1223; *Myers v. Centralia Cartage Co.* (1981), 94 Ill. App. 3d 1139, 419 N.E.2d 465; and *Hurtt v. Davidson* (1980), 84 Ill. App. 3d 681, 406 N.E.2d 90.

■▌ We conclude that the words and conduct shown in the record disclose more than the investigation and negotiation customary in these transactions and the sum of the conduct shown was sufficient to raise an issue of fact as to whether plaintiff was reasonably induced to believe that her claim would be settled. Upon such conclusion we reverse.

■▌ The complaint requested a trial by jury, and the issue of the presence or absence of waiver of estoppel should be determined by a jury as the trier of fact. (*Loughran v. A & M Moving & Storage Co.* (1974), 17 Ill. App. 3d 119, 307 N.E.2d 794.) As in *Kinsey v. Thompson* (1963), 44 Ill. App. 2d 304, 194 N.E.2d 565; and *Wells v. Lueber* (1976), 43 Ill. App. 3d

214

973, 358 N.E.2d 293, we remand the cause to the circuit court with instructions that the issue of waiver or equitable estoppel be determined by a jury, prior to and separate from any trial upon questions of liability and damages.

The order of the trial court is reversed and the cause is remanded for further proceedings not inconsistent with the views herein expressed.

Reversed and remanded with instructions.

MILLS and LONDRIGAN, JJ., concur.