Greg SANDER, Deborah Sander, and Greg Sander and Deborah Sander, Guardians Ad Litem for Danielle Sander, a Minor, Plaintiffs and Appellants,

v.

Florence WRIGHT, Defendant and Appellee.

No. 15193.

Supreme Court of South Dakota.

Considered on Briefs May 22, 1986.

Decided Oct. 22, 1986.

Dana J. Frohling of Hyde Law Office, Aberdeen, for plaintiffs and appellants.

Chester A. Groseclose, Jr. of Richardson, Groseclose, Kornmann & Wyly, Aberdeen, for defendant and appellee.

HENDERSON, Justice.

This is a civil appeal from a Partial Summary Judgment which dismissed a portion of a personal injury action as being barred by the statute of limitations. The action was commenced eight months after the statute had run. SDCL 15–2–14(3) prescribes three years within which to bring a personal injury action in South Dakota. Deeming a question of fact exists on equitable estoppel, we reverse and remand.

On September 23, 1981, the Greg Sander family was going out to eat in Aberdeen, South Dakota. Mr. Sander was driving the family van and Mrs. Sander was in the front passenger seat. Danielle, one of the Sanders' daughters, was sitting on a back bench seat. After receiving a green light at an Aberdeen intersection, the Sanders' van proceeded forward when it was involved in a near collision with a car driven by Mrs. Florence Wright. Mrs. Wright apparently ran a red light but the two vehicles did not actually collide. Because of the necessary application of the brakes, however, Mrs. Sander and Danielle were thrown against the van's inside windshield and dashboard thereby sustaining personal injuries.

Sometime after this near collision, Charles Cruse (Cruse), investigated the incident. Cruse is a claims adjuster for Mrs. Wright's automobile liability carrier, American Family Mutual Insurance Company (American Family). Cruse contacted Mrs. Sander and stated that related medical bills should be submitted to him and he would

see that the bills were paid. Between February 1982 and February 1983, over $1,500 in related medical bills were submitted to Cruse by Mrs. Sander and paid by American Family. Although the statute of limitations and the employment of counsel were never discussed between Cruse and the Sanders, in November 1982, Cruse advised his company that it would be advantageous for American Family to continue paying the medical expenses because he believed the Sanders would employ ("run to") an attorney if such payments were not made. American Family decided that it would be in the best interests of its company to continue to make payments on the claim rather than run the risk of having the Sanders employ an attorney.

Contact between the Sanders and Cruse was frequent. Cruse saw the Sanders on a personal basis and told them to send related bills to him and he would take care of their medical expenses. Cruse raised settlement discussions on numerous occasions. The Sanders, however, did not desire to discuss settlement as they were unfamiliar with its procedure and unaware of the future extent of related medical expenses.

In June 1983, Cruse contacted Mrs. Sander to check on her situation and to raise settlement discussions. Mrs. Sander, however, was entertaining relatives and did not want to discuss settlement. Mrs. Sander did inform Cruse that Danielle was in good health and had not complained of neck pain for some time. Mrs. Sander also informed Cruse that she was doing well and that a medical device purchased for her by American Family seemed to control her back problems. On July 6, 1983, Cruse again contacted Mrs. Sander to settle but since Mrs. Sander was entertaining out-of-state visitors, no lengthy discussion occurred. At this time, Cruse stated that he would contact Mrs. Sander in the future. However, he did not do so. There are questions of fact concerning when Mrs. Sander last talked to the insurance adjuster and who said what to whom. There is conflicting evidence on conversations concerning contacts between the insurance adjuster and Mrs. Sander in 1983 and 1984.

In August 1983, Cruse suggested to his superior that the Sander file be closed as he was convinced that Mrs. Sander was very satisfied with the handling of her claim and that Mrs. Sander did not consider her daughter's claim to be of any consequence since those bills were paid. It was also suggested that the file be reopened if and when the Sanders pursued settlement. In March 1984, with no contact initiated by the Sanders in over a year, and acknowledging that the statute of limitations would transpire in September of that year, the Sander file was closed.

In February 1985, Mrs. Sander submitted related medical bills incurred in 1984. By letter, Cruse indicated that the statute of limitations had run but that the bills would be paid if the Sanders signed a release of all future claims. On May 20, 1985, the Sanders filed suit against Mrs. Wright, praying for over $100,000.

Mrs. Wright answered and specifically asserted the applicable statute of limitations. SDCL 15-2-14(3). Mrs. Wright then moved for partial summary judgment as to Mrs. Sander's claim for damages; Mr. Sander's claim for damages for loss of his wife's society, comfort, and companionship; and the Sanders' claim for expenses incurred on behalf of their daughter Danielle. Based on the record and the depositions, the trial court granted Partial Summary Judgment. Only the child's right to bring an action survived in the lower court. In so granting Partial Summary Judgment, the trial court found that Cruse's conduct did not estop Mrs. Wright from asserting the statute of limitations. We disagree.

We are confronted with a question involving the insurance adjuster's interactions with the Sanders; more specifically, if the conduct of the insurance adjuster and his company estops Mrs. Wright from asserting the three-year statute of limitations. We determine that, under the state of the record, genuine issues of material fact exist in this case and we conclude that Partial Summary Judgment was improperly granted.

The Sanders contend that Mrs. Wright should be estopped from asserting the statute of limitations because Cruse's conduct, as Mrs. Wright's insurance adjuster, lulled them into a false sense of security that their claims had been accepted and that litigation was unnecessary. They maintain that they relied upon the representations of the insurance adjuster, and thus the insurance company whom he was representing, to their absolute legal disadvantage. In essence, they are contending that they were taken advantage of by representations and conduct which had, as a basis, a prevention of the assertion of their legal rights. In making this contention, the Sanders point out a discrepancy in South Dakota cases concerning the elements of equitable estoppel. In some cases, we have stated that to create an equitable estoppel

> there must have been some act or conduct upon the part of the party to be estopped, which has in some manner misled the party in whose favor the estoppel is sought and has caused such party to part with something of value or do some other act relying upon the conduct of the party to be estopped, thus creating a condition that would make it inequitable to allow the guilty party to claim what would otherwise be his legal rights.

*Western Cas. & Sur. v. American Nat'l Fire Ins. Co.*, 318 N.W.2d 126, 128 (S.D. 1982). *See also, In re Estate of Williams*, 348 N.W.2d 471 (S.D.1984); *Farmers Elevator Co. of Elk Point v. Lyle*, 90 S.D. 86, 238 N.W.2d 290 (1976); *Northwest Realty Co. v. Colling*, 82 S.D. 421, 147 N.W.2d 675 (1966); *Chleboun v. Varilek*, 81 S.D. 421, 136 N.W.2d 348 (1965); *Dodds v. Bickle*, 77 S.D. 54, 85 N.W.2d 284 (1957); and *Willadsen v. Crawford*, 75 S.D. 161, 60 N.W.2d 692 (1953). *See further, Roseth v. St. Paul Property & Liab. Ins.*, 374 N.W.2d 105, 108 (S.D.1985) (Henderson, J., dissenting) (note discussions by Henderson, J., on distinctions and holdings of this Court on the doctrines of estoppel, equitable estoppel, promissory estoppel, estoppel in pais, and detrimental reliance); * and *Kraft v. Corson County*, 71 S.D. 382, 387, 24 N.W.2d 643, 646 (1946) (Sickel, J., and Wohlheter, Judge, dissenting). In other cases, it has been stated that in order for equitable estoppel to exist, there must be fraud, false representations, or concealment of material facts. *See Valley Bank v. Dowdy*, 337 N.W.2d 164 (S.D.1983); *Taylor v. Tripp*, 330 N.W.2d 542 (S.D.1983); *Spitzer v. Spitzer*, 84 S.D. 147, 168 N.W.2d 718 (1969); and *Cromwell v. Hosbrook*, 81 S.D. 324, 134 N.W.2d 777 (1965). *See also, Estate of Williams*, 348 N.W.2d at 477 (Fosheim, C.J., dissenting); and *Minor v. Sully Buttes Sch. Dist. No. 58–2*, 345 N.W.2d 48, 53 (S.D.1984) (Morgan, J., dissenting).

On appeal, the Sanders request that we resolve this discrepancy and determine that fraud, false representations, or concealment of material facts *are not* elements of equitable estoppel in nonrealty cases. As support for this proposition, the Sanders cite these cases: *Common Wealth Ins. Systems, Inc. v. Kersten*, 40 Cal.App.3d 1014, 115 Cal.Rptr. 653 (1974); *First Nat'l Bank of Denver v. Ulibarri*, 38 Colo.App. 428, 557 P.2d 1221 (1976); *Kojro v. Sikorski*, 267 A.2d 603 (Del.Super.1970); *Cessna v. Montgomery*, 63 Ill.2d 71, 344 N.E.2d 447 (1976), *rev'd on other grounds*, 104 Ill.2d 261, 84 Ill.Dec. 471, 472 N.E.2d 431 (1984); *Dart v. Thompson*, 261 Iowa 237, 154 N.W.2d 82 (1967); *Pino v. Maplewood Packing Co.*, 375 A.2d 534 (Me.1977); *Addressograph-Multigraph Corp. v. Zink*, 273 Md. 277, 329 A.2d 28 (1974); *Watkins v. Central Motor Lines, Inc.*, 279 N.C. 132, 181 S.E.2d 588 (1971); and *Douglass v.*

---

* In said dissent, the writer reflects: "Estoppel did not just arise, like the mists of creation; it was born out of conscience and embodied in the law to right wrongs." *Roseth*, 374 N.W.2d at 110. Here, a prima facie case is established that the insurance company, and its agent, cleverly induced the Sanders not to engage counsel to their prejudice by leading them to believe that the insurance company would pay all related medical bills. Thus, on the surface, it would appear that the Sanders did forebear litigation relying upon the conduct of the adjuster. Indeed, medical bills were paid by the insurance company lulling the Sanders into believing that their claims had been accepted. In equity, a conscience of fair dealing arises. *Id.*

*Rowland,* 540 S.W.2d 252 (Tenn.App.1976). We determine, however, that such a resolution is unnecessary, for under either theory of equitable estoppel, genuine issues of material fact exist under the facts of this case. The record evinces conduct which a jury could conclude was fraudulent, or was conduct upon which the Sanders reasonably relied to their detriment.

■ Under certain circumstances, a defendant may be estopped from raising the statute of limitations defense. *Schuster v. Woodmen Accident & Life Co.,* 361 N.W.2d 286 (S.D.1985); *Jandreau v. Sheesley Plumbing & Heating Co.,* 324 N.W.2d 266 (S.D.1982); *Moody v. L.W. Tyler, Custom Combiners,* 297 N.W.2d 179 (S.D. 1980); *Arbach v. Gruba,* 89 S.D. 322, 232 N.W.2d 842 (1975). Thus, an insurance adjuster acting for an insurance company may be considered the agent of the insured so as to estop the defendant-insured from raising the statute of limitations defense, *see Mandola v. Mariotti,* 557 S.W.2d 350 (Tex.Civ.App.1977), and 16 Appleman, *Insurance Law and Practice* § 8646 (1981); and numerous cases have held, under varying facts and circumstances, that the acts or conduct of an insurance adjuster have estopped the defendant-insured from asserting the statute of limitations, or have created an estoppel question for the resolution of the trier of fact. *See, e.g., Delson v. Minogue,* 190 F.Supp. 935 (E.D.N.Y. 1961); *Kilburn v. Keenan,* 27 Conn.Supp. 394, 240 A.2d 213 (1967); *Zaayer v. Axel,* 102 Ill.App.3d 208, 57 Ill.Dec. 709, 429 N.E.2d 607 (1981); *Farmers Mut. Auto. Ins. Co. v. Dealers Auto Transport,* 192 Kan. 678, 391 P.2d 307 (1964); *MacKeen v. Kasinskas,* 333 Mass. 695, 132 N.E.2d 732 (1956); *Peters v. Pub. Serv. Corp.,* 132 N.J.Eq. 500, 29 A.2d 189 (1942), *aff'd,* 133 N.J.Eq. 283, 31 A.2d 809 (1943); *Dupuis v. Van Natten,* 61 A.D.2d 293, 402 N.Y.S.2d 242 (1978); *Hart v. Bridges,* 591 P.2d 1172 (Okla.1979); *Lyden v. Goldberg,* 260 Or. 301, 490 P.2d 181 (1971); *Mandola,* 557 S.W.2d 350; and *McLaughlin v. Blake,* 120 Vt. 174, 136 A.2d 492 (1957).

Here, liability was not disputed and an agreement was reached that Cruse would see to the payment of related medical bills when submitted by Mrs. Sander. Both Mr. and Mrs. Sander testified to this. These bills were paid, medical equipment was purchased, and settlement was raised. Cruse and his superior concluded that medical expenses should continue to be paid as the Sanders would "run to" an attorney if payments stopped and the running of the statute of limitations was noted in a memo from Cruse to American Family six months before it transpired. Cruse testified that it was his policy to inform or remind claimants of the statute of limitations three or six months before it ran when progress was stalemated. He further testified, however, that he did not do so with the Sanders. There was no activity indicating that the Sanders' claim had not been accepted, nor that the Sanders would have to bring suit to compel action. In an affidavit considered by the trial court, Mr. Sander stated that they believed it was unnecessary to contact a lawyer because Cruse told them that American Family would pay all of their bills. Affidavits are to be liberally construed with a view of substantial justice between the parties. *Olson v. Thresher Co.,* 43 S.D. 518, 523, 180 N.W. 961, 962 (1921). Substantial justice we should seek and dispense.

■ We hold that the trial court erred in awarding Partial Summary Judgment, because jury questions exist as to equitable estoppel. Mrs. Wright greatly relies on *Jandreau,* 324 N.W.2d 266. We do not believe *Jandreau* is analogous to the situation addressed herein. Attempting to assist in repairing alleged defects in an irrigation system does not suggest the guile such as we have before us in this case. We therefore reverse and remand for a jury's determination on this matter.

Deeming we have resolved this appeal by addressing the controlling issue, we do not address other issues raised in the briefs.

Reversed and remanded.

SABERS, J., concurs.

FOSHEIM, J., concurs in result.

WUEST, C.J., and MORGAN, J., dissent.

FOSHEIM, Justice (concurring in result).

As the majority opinion indicates, this Court has embraced various standards regarding the equitable estoppel doctrine. The cases can essentially be separated into three categories: (1) Those stemming from *Somers v. Somers,* 27 S.D. 500, 131 N.W. 1091 (1911), which merely require that the party sought to be estopped must have "in some manner misled the party in whose favor the estoppel is sought." *Id.,* 131 N.W. at 1093. *See also, e.g., Estate of Williams,* 348 N.W.2d 471, 475–76 (S.D. 1984); *L.R. Foy Constr. v. Spearfish Sch. Dist. No. 40–2,* 341 N.W.2d 383, 386 (S.D. 1983); *Western Cas. & Sur. v. American Nat'l Fire Ins. Co.,* 318 N.W.2d 126, 128 (S.D.1982); *Farmers Elevator Co. of Elk Point v. Lyle,* 90 S.D. 86, 91, 238 N.W.2d 290, 293 (1976); *Kelly v. Gram,* 73 S.D. 11, 24, 38 N.W.2d 460, 466 (1949). (2) Those stating that "false representations or concealment of material facts must exist." *Taylor v. Tripp,* 330 N.W.2d 542, 545 (S.D. 1983); *Northwest Realty Co. v. Colling,* 82 S.D. 421, 432, 147 N.W.2d 675, 682 (S.D. 1966); *Cromwell v. Hosbrook,* 81 S.D. 324, 329, 134 N.W.2d 777, 780–81 (S.D.1965). (3) Those requiring proof of "fraud ... or such gross negligence ... as to amount to constructive fraud." *Spitzer v. Spitzer,* 84 S.D. 147, 152, 168 N.W.2d 718, 721 (1969). *See also Lambert v. Bradley,* 73 S.D. 316, 320–21, 42 N.W.2d 606, 609 (1950); *Kraft v. Corson County,* 72 S.D. 396, 398, 34 N.W.2d 838, 839 (1948); *Kraft v. Corson County,* 71 S.D. 382, 384–85, 24 N.W.2d 643, 644 (1946). After acknowledging the various versions, however, the majority opinion proceeds to sidestep and sweep them all under the rug. This in effect is telling our lawyers and trial judges that the correct equitable estoppel * standard is (1), (2), or (3). Does this foster stability? How then are clients to be advised or juries

instructed? We should not leave our attorneys and Judges in doubt as to the law in South Dakota.

My preference is for the second standard as expressed in *Taylor, supra:*

> In order to constitute an equitable estoppel, [also known today as] estoppel in pais, false representations or concealment of material facts must exist; the party to whom it was made must have been without knowledge of the real facts; th[e] representations or concealment must have been made with the intention that it should be acted upon; and the party to whom it was made must have relied thereon to his prejudice or injury. There can be no estoppel if any of these essential elements are lacking, or if any of them have not been proved by clear and convincing evidence.

*Id.,* 330 N.W.2d at 545, *quoting Cromwell,* 134 N.W.2d at 780–81. *See also, Williams,* 348 N.W.2d at 477 (Fosheim, C.J., dissenting); 3 Pomeroy *Equity Jurisprudence* § 805 at 191 (5th ed. 1941); 28 Am.Jur.2d *Estoppel and Waiver* § 35 (1966). Federal courts have adopted this formulation as the correct statement of the doctrine in South Dakota. *In re Sepco, Inc.,* 36 BR 279, 286 (D.S.D.1984); *Canton Lutheran Church v. Savik,* 507 F.Supp. 873, 879 (D.S.D.1981).

In my opinion, however, the false representation or concealment standard is so similar to our definition of actionable fraud as defined in *Northwest Realty Co. v. Colling* that the two may be considered synonymous. In that case we held:

> Essential elements to establish actionable fraud are 'generally speaking, that a representation was made as a statement of fact, which was untrue and known to be untrue by the party making it, or else recklessly made; that it was made with intent to deceive and for the purpose of inducing the other party to act upon it; and that he did in fact rely on it and was

---

* Equitable estoppel should be distinguished from other types of estoppel such as promissory estoppel or estoppel by deed. For an explanation

of the difference between the former two, *see Farmers Elevator Co. of Elk Point v. Lyle,* 90 S.D. 86, 238 N.W.2d 290 (1976).

induced thereby to act to his injury or damage.' (citations omitted).

147 N.W.2d at 683. *See also, Spitzer,* 168 N.W.2d at 721. Standards two (2) and three (3) may be treated as requiring proof of fraud.

The significance of standard one (1) versus standards two (2) and three (3) relates to pleadings and proof. Fraud is a defense which must be set forth affirmatively. SDCL 15–6–8(c). We have repeatedly held that fraud is never presumed nor lightly inferred and that the burden of establishing fraud rests on the party who seeks to rely on it for affirmative relief or as a defense to an action. *E.g., Spitzer,* 168 N.W.2d at 721; *Northwest Realty,* 147 N.W.2d at 683; *City of Vermillion v. Hugener,* 75 S.D. 106, 111, 59 N.W.2d 732, 735 (1953); *Breneman v. Aune,* 73 S.D. 478, 481, 44 N.W.2d 219, 220–21 (1950).

Since we remand for a trial in which the trial court must apply the doctrine of equitable estoppel, we should settle this uncertainty. However, since I agree that a material factual issue as to fraud exists, I hereby concur in the result.

WUEST, Chief Justice (dissenting).

I dissent.

As pointed out in the majority opinion, the adjuster contacted Mrs. Sander in June and July of 1983 for the purpose of settlement discussions. Because she was entertaining relatives, she declined to discuss settlement. In March, 1984, with no contact initiated by the Sanders in over a year, the Sander file was closed. The statute of limitations ran in September, 1984. The majority opinion states that the record evinces conduct which a jury could conclude was fraudulent, or was conduct upon which the Sanders reasonably relied to their detriment (equitable estoppel). In my opinion those facts do not exist. I would affirm.

I am hereby authorized to state that Justice MORGAN joins in this dissent.