WILBUR SPONEMANN *et al.*, Plaintiffs-Appellants, *v.* COUNTRY MUTUAL INSURANCE COMPANY, Defendant-Appellee.

Fifth District   No. 82—665

Opinion filed December 6, 1983.

Dunham, Boman & Leskera, of Belleville (John W. Leskera, Robert D.

Francis, and Russell K. Scott, of counsel), for appellants.

Stephen W. Thomson, of Reed, Armstrong, Gorman & Coffey, of Edwardsville, for appellee.

JUSTICE JONES delivered the opinion of the court:

Plaintiffs appeal from the trial court's judgment in favor of the defendant insurance company in the plaintiffs' action upon the uninsured motorist clause of an automobile insurance policy issued by the defendant. The trial court found that the plaintiffs' action was barred by a two-year limitation period provision contained in the policy and that the defendant was not estopped from asserting this provision as a defense to the plaintiffs' action. Upon consideration of the record we find that the trial court's decision was contrary to the manifest weight of the evidence on the issue of the defendant's estoppel to assert the policy limitation provision. We accordingly reverse the judgment of the trial court and remand this cause for further proceedings.

On August 26, 1972, the plaintiffs, Wilbur, Frieda, Susan and Peggy Sponemann, were involved in an automobile accident in Craig County, Oklahoma, with a motorist named Joseph Hajjar. At the time of the accident the plaintiffs were insured under a policy of insurance issued by the defendant, Country Mutual Insurance Company, which provided uninsured motorist protection to the plaintiffs.

An investigation initiated by the defendant upon being notified of the accident revealed that Hajjar was uninsured at the time of the accident and that he had recently moved from New York to California to commence work. Based upon this information, the defendant's claimsman, Darrell Tripp, concluded in a report to his supervisor that the plaintiffs would be making an uninsured motorist claim to the defendant. Tripp met with the plaintiffs periodically in the months following the accident, and payments were made to the plaintiffs by the defendant under the personal injury protection provision of the policy.

In the spring of 1974 the plaintiffs retained attorney John Leskera to represent them on their claim for uninsured motorist benefits. Leskera notified the defendant of his representation on March 6, 1974, and, on March 18, 1974, claimsman Tripp contacted Leskera, offering to discuss the plaintiffs' claim when he had secured sufficient medical information. Tripp advised Leskera that he was awaiting receipt of a medical report from Dr. Semon, who had recently operated on Frieda Sponemann.

On August 20, 1974, before Dr. Semon's report was received, the plaintiffs filed suit in Oklahoma against the uninsured motorist, Jo-

seph Hajjar. The defendant had requested the plaintiffs to file this action prior to the running of the two-year statute of limitations on the plaintiffs' cause of action in order to protect the defendant's subrogation rights against Hajjar.

Tripp received Dr. Semon's report on Frieda Sponemann on December 24, 1974, and the report was forwarded to Leskera. On January 17, 1975, Tripp met with the plaintiffs and Leskera to negotiate a settlement of the plaintiffs' uninsured motorist claim. The parties were unable to come to an agreement regarding this claim, and, on that same date, Leskera wrote to the defendant demanding arbitration of the plaintiffs' claim.

In March 1975 Victor Rochelle, claims attorney for the defendant, wrote to Leskera indicating that there was a dispute regarding the plaintiffs' coverage under the uninsured motorist provision that would have to be resolved before arbitration could proceed, as arbitration concerned only the issues of liability of the uninsured motorist and the extent of damages. The parties held further negotiations in August 1975 to discuss settlement of the coverage issue as well as the liability and damages issues.

Upon failure of the parties to reach a settlement, the defendant sought and obtained leave to intervene in the plaintiffs' suit against Hajjar in Oklahoma. In its petition in intervention, filed October 7, 1975, the defendant denied both the plaintiffs' injuries and Hajjar's negligence and alleged that plaintiff Frieda Sponemann was guilty of contributory negligence that proximately caused the accident. The defendant also filed a cross-claim against the uninsured motorist Hajjar, claiming its right to subrogation and indemnity in the event the defendant became liable to the plaintiffs under the uninsured motorist provision of their policy.

On October 23, 1975, the plaintiffs filed the instant declaratory judgment action in Illinois. In their complaint the plaintiffs alleged the applicability of the uninsured motorist provision of the policy and the defendant's refusal to arbitrate upon written demand by the plaintiffs. The defendant filed a motion to dismiss this action on the grounds that the demand to arbitrate was not timely filed within the two-year limitation period contained in the policy.

In January 1977 the defendant amended its petition in intervention in the Oklahoma action, alleging that the plaintiffs' cause of action against Hajjar was barred by the Oklahoma statute of limitations because Hajjar had not been served within two years of the accident. The amendment also stated that the plaintiffs' action against the defendant was barred by failure to comply with the provisions of

the plaintiffs' policy. The Oklahoma court, in July 1977, granted summary judgment for the defendant insurance company, finding that the action against Hajjar was not timely filed in Oklahoma and that the plaintiffs' claim was not commenced within the limitation period contained in the policy.

The defendant then sought to assert the Oklahoma judgment as a bar to the plaintiffs' declaratory judgment action in Illinois. The trial court granted the defendant's motion for summary judgment based on the *res judicata* effect of the Oklahoma judgment. On appeal this court in *Sponemann v. Country Mutual Insurance Co.* (1981), 98 Ill. App. 3d 352, 424 N.E.2d 416 (*Sponemann* I), reversed the trial court's grant of summary judgment, holding that the Oklahoma judgment did not have *res judicata* effect as to the defendant's policy limitation defense and that the trial court erred in dismissing the plaintiffs' action without giving them an opportunity to show that the defendant's actions estopped it from asserting the policy limitation provision as a defense.

Upon remand the plaintiffs filed a third amended complaint in which they alleged that the defendant had engaged in a course of conduct "calculated to lull the plaintiffs into a reasonable belief that their claim for uninsured motorist coverage would be settled without arbitration." Specifically, the plaintiffs asserted that the defendant had discussed settlement of the plaintiffs' claim with their attorney both before and after expiration of the policy limitation period and had further "required and induced plaintiffs to file an action against the uninsured motorist Hajjar in Oklahoma." Because of the defendant's conduct encouraging delay in the filing of their demand for arbitration, the plaintiffs contended, the defendant was equitably estopped from asserting the two-year limitation provision of the policy.

At a hearing on the complaint held July 21, 1982, the defendant's claimsman Tripp, called as an adverse witness by the plaintiffs, testified that he had met with the Sponemanns shortly after the August 1972 accident and had informed them that Hajjar, the driver of the other vehicle, was uninsured. Tripp stated that his company had known almost from the beginning that an uninsured motorist claim would be presented by the plaintiffs. He testified, however, that payments were made to the plaintiffs only under the personal injury protection provision of the policy, and he denied having investigated the plaintiffs' claim as an uninsured motorist matter.

In further testimony plaintiffs' counsel asked Tripp:

"Q. In a conversation with Mr. Leskera that you had in July 1974, did you advise him, tell him, that your company, Country

Companies, desired that he file a suit in Oklahoma against the uninsured motorist involved in this occurrence, Joseph Hajjar?

A. I don't know that I told him we desired that he file a suit. I think there was a discussion about him filing a suit.

Q. Okay. Were you instructed by your home office that [sic] to communicate to Leskera that a suit should be filed by him in Oklahoma regarding this claim against Hajjar?

A. I think I probably was. I think Jack [Leskera] had asked if we were going to file a suit. In other words, I'm not sure what the conversation really involved.

Q. Well, I want to be sure we have this straight. But the question is did you instruct Jack to file suit in Oklahoma against the uninsured motorist Hajjar stating that that was the wishes of your company that he do that?

A. I don't—I can't visualize me stating to him that 'Hey, you file a lawsuit.'

Q. Well, do you recall this part of your deposition taken December 17, 1976 at page six? The question was asked by Mr. Leskera to you. 'Are you saying you didn't call me and tell me that Country Mutual had advised you about filing a suit in Oklahoma, that we should go ahead and file it because you didn't want to have any statute waived down there?' And your answer was: 'The only recollection I have, Jack, is that I apparently was instructed by someone in the home office that a suit should be filed in Oklahoma and that suit should be filed by you.'

A. Okay.

Q. Okay.

A. That's apparently what I told him."

Attorney John Leskera, testifying for the plaintiffs, likewise related that Tripp had advised him to file suit in Oklahoma against Hajjar. Leskera stated:

"The conversation between Mr. Tripp and I was this, that it was coming on two years since the date of the accident, that Mr. Hajjar—that if suit were to be filed against Hajjar, the suit would be filed within the two year period. I expressed the opinion in our conversation that there was no point in filing suit against Hajjar. The reasons I gave for that were: number one, it had been determined by Country Mutual's investigation that there was no insurance on his part; number two, the—there was no other obvious place for collection of any subrogation interest that Country Mutual may have. And so I expressed to

Mr. Tripp our willingness to file suit as to Mr. Hajjar, if that's what Country Companies wanted us to do, to preserve its rights of subrogation, but I likewise expressed the idea that there was no practical reason as I saw it to file suit because it did not appear that there was any practical method of recovery against Hajjar."

Leskera noted that he was "certainly relying upon [Tripp's] investigation and his comments to me that Hajjar was [uninsured] and that there was no way to do anything about it." Leskera continued by saying that after this conversation,

"[Tripp] called and said that somebody had thought it over from the company and that they thought it was appropriate that we file suit, *** and so therefore, I said, well, if you want us to do that, because there is a policy provision which says we should not do anything to affect the rights of Country Mutual, we will go ahead and do it."

Leskera testified further that when Tripp had first contacted him regarding the plaintiffs' uninsured motorist claim in March 1974, Tripp had indicated that the defendant was liable under the uninsured motorist coverage of the policy but that the plaintiffs' claim could not be evaluated until Dr. Semon's report was obtained. Leskera stated that he and Tripp had agreed "that we would await the obtaining of the reports and we would have a discussion after which we would settle the claim or not, and if we couldn't, we would file a claim for arbitration." Leskera stated that there had been no disagreement between him and Tripp regarding the plaintiffs' uninsured motorist claim until they met to discuss settlement of the claim in January 1975 after receiving Dr. Semon's report in December 1974. Thus, he testified, there had been no purpose in demanding arbitration of the plaintiffs' claim before that time.

On cross-examination Leskera testified that he had been aware of the two-year limitation period for filing an arbitration demand prior to August 26, 1974, but that he had made a conscious decision not to file the written demand because of the agreement he had with claimsman Tripp.

On direct examination by the defendant, Tripp stated that he did not recall telling the plaintiffs or Leskera prior to August 26, 1974, that the uninsured motorist matter would be settled or that they need not file a demand for arbitration. He also did not recall any discussion with Leskera to the effect that the plaintiffs' claim could not be arbitrated until the medical reports were received.

Victor Rochelle, claims attorney for the defendant, testified that

he first became involved with the plaintiffs' claim in January 1975 when the plaintiffs' demand for arbitration was filed. At that time a check was made to see if any lawsuits had been filed in Oklahoma, and Rochelle learned of the Oklahoma litigation for the first time. Rochelle testified that an attorney working for the defendant in Oklahoma informed him that under Oklahoma law, the defendant would be bound by a default judgment taken against the uninsured motorist Hajjar without regard to the liability and damages of the uninsured motorist and possibly as to the plaintiffs' coverage under the policy. For this reason, Rochelle stated, a decision was made in the spring of 1975 to intervene in the Oklahoma proceeding so that the defendant could protect itself on these issues. The defendant's representatives, however, continued to negotiate with the plaintiffs regarding their uninsured motorist claim until October 1975, when the defendant's petition to intervene was filed.

Rochelle stated that he had no knowledge that anyone within the defendant's organization had directed Leskera to file suit in Oklahoma against the uninsured motorist. He maintained that there had been no design on the defendant's part to send Leskera to Oklahoma to take advantage of him but that the defendant had sought only to protect its rights in that proceeding. Rochelle testified further that the defendant's attorney never appeared in the Oklahoma action on behalf of the uninsured motorist but that the defendant asserted the statute of limitations defense in that action on its own behalf. Rochelle added that if the Oklahoma action had been decided in favor of the plaintiffs, the defendant would still have had its subrogation claim against the uninsured motorist.

In further questioning, reference was made to an internal memorandum written in September 1975 by Richard Berger, an attorney working for the defendant under Rochell's supervision. In the memorandum, introduced into evidence by the plaintiffs, Berger stated that it was in the defendant's best interest to intervene in the lawsuit filed by the plaintiffs in Oklahoma. He noted that arbitration in Madison County, Illinois, would likely cost the company most of its policy limits while jury verdicts in Craig County, Oklahoma, were "quite conservative." The attorney representing the defendant in the Oklahoma litigation had been advised, Berger stated, that any result reached in Oklahoma should be definitive and final so as to be given full faith and credit in Illinois.

Following the hearing the trial court entered its judgment on October 26, 1982, finding as follows:

"6. There is no basis in the evidence for the finding that any

conduct of agents of Country Mutual Insurance Company constituted adequate grounds for plaintiff's counsel to refrain from taking appropriate steps to avoid the running of the two (2) year limitation period.

The court has been furnished with no cases by counsel nor has it discovered any through its own research where a party represented by competent counsel, which is clearly the case in this situation, has been able to establish that an insurance carrier should be estopped to assert its policy defenses under such circumstances as exist herein.

Defendant Country Mutual Insurance Company is not estopped from asserting its limitation period provision as a defense to plaintiffs' claims. Defendant merely asserted a right it had under the policy. The court finds no basis for plaintiffs' position that plaintiffs' attorney failed to comply with the appropriate policy provision due to conduct by defendant that would give rise to estoppel.

7. The relief requested by plaintiff [*sic*] should be denied in its entirety."

On appeal from this judgment the plaintiffs contend that the trial court failed to give adequate consideration to all elements of the defendant's conduct in finding that the defendant was not estopped from asserting its policy limitation as a defense to the plaintiffs' action. In particular, the plaintiffs note the defendant's admission that shortly before the running of the two-year arbitration period, the defendant requested plaintiffs' counsel to institute suit in Oklahoma against the admittedly uninsured motorist to protect the defendant's subrogation interest. The plaintiffs assert that this request carried with it the implication that uninsured motorist benefits would be paid so as to give rise to a subrogation interest on the part of the defendant. Since, the plaintiffs maintain, there was no advantage to the plaintiffs in filing the Oklahoma suit, the defendant's request, made at a time when the parties were amicably negotiating the plaintiffs' claim, was an affirmative act sufficient to lull not only the plaintiffs but their experienced attorney into a reasonable belief that the plaintiffs' claim would be settled without suit.

The plaintiffs also strenuously contend that the defendant's later conduct of intervening in the Oklahoma suit and asserting the defenses of the uninsured motorist evidenced, at worst, a devious subterfuge to find a more favorable forum in which to defeat the plaintiffs' claim and, at best, a bad faith attempt to escape liability after invoking the cooperation of the plaintiffs' attorney. We note in this re-

gard that once the Oklahoma action had been filed by the plaintiffs' attorney, ostensibly to protect the defendant's subrogation rights against the uninsured motorist, the defendant changed its position and "stepped into the shoes" of the uninsured motorist to litigate against the plaintiffs. Despite the testimony of defendant's attorney Rochelle that the defendant's sole objective was to protect itself from being bound by a default judgment in Oklahoma, the evidence shows that the defendant's representatives weighed the relative advantages of having the plaintiffs' claim determined by a jury in Oklahoma rather than by an arbitrator in Illinois. Their direction to the defendant's litigator in Oklahoma that the Oklahoma judgment should be definitive and final so as to be given full faith and credit in Illinois shows a purpose to protect themselves not only as to execution of a judgment in Oklahoma but also as to any recovery that might be sought in Illinois. As this court stated in *Sponemann* I, such conduct on the part of the defendant was in contravention of both the public policy favoring compensation of victims of an uninsured motorist (see *Roby v. Illinois Founders Insurance Co.* (1978), 57 Ill. App. 3d 89, 372 N.E.2d 1097) as well as the public policy favoring arbitration of uninsured motorist claims (see Ill. Rev. Stat. 1981, ch. 73, par. 755a; *Sponemann* I).

While the record in the instant case may not expressly reflect an overall plan by the defendant to defeat the plaintiffs' claim in Oklahoma, we believe the defendant's conduct in requiring the plaintiffs to institute the Oklahoma action was sufficient, in light of later developments in the case, to estop the defendant from asserting the policy limitation provision as a defense to the plaintiffs' declaratory judgment action in Illinois. It is well settled that an insurance company may be estopped from raising a limitations defense by conduct which induces in its insured a reasonable belief that his claim will be settled without suit. (*Myers v. Centralia Cartage Co.* (1981), 94 Ill. App. 3d 1139, 419 N.E.2d 465.) While the mere pendency of negotiations between the parties will not, of itself, give rise to an estoppel, estoppel may be found where negotiations are such as to lull the insured into a false security, thereby causing him to delay the assertion of his rights. (*Dickirson v. Pacific Mutual Life Insurance Co.* (1925), 319 Ill. 311, 150 N.E. 256; *Myers v. Centralia Cartage Co.*; 18 Couch on Insurance sec. 75:209 (2d ed. 1968).) Since estoppel is recognized in order to protect from harm a party who has relied to his prejudice upon the acts of another, it is immaterial that the insurer intended neither to mislead the insured nor to relinquish its own rights under the policy. *Florsheim v. Travelers Indemnity Co.* (1979), 75 Ill. App.

3d 298, 393 N.E.2d 1223; 18 Couch on Insurance sec. 71:16 (2d ed. 1968).

The determination of whether estoppel exists depends upon the circumstances of a given case and may consist of various factors. (See *Zaayer v. Axel* (1981), 102 Ill. App. 3d 208, 429 N.E.2d 607.) In the instant case, as we have indicated, the determinative factor giving rise to estoppel was the defendant's act of soliciting the plaintiffs' cooperation in filing the uninsured motorist suit. At the time of the defendant's request, the parties were amicably negotiating the plaintiffs' uninsured motorist claim while awaiting an evaluation of Frieda Sponemann's medical condition. The defendant had been unable to locate the admittedly uninsured driver of the other vehicle, and the plaintiffs thus had nothing to gain from filing suit against him. The plaintiffs filed the uninsured motorist suit, then, only at the defendant's request and only to protect the defendant's subrogation rights, which would arise upon settlement of the plaintiffs' claim. In view of the timing and the purpose of the uninsured motorist suit, we believe the defendant's solicitation of the plaintiffs' aid in filing the suit was sufficient to prompt a reasonable belief on the plaintiffs' part that the defendant would work with them to settle their own claim without suit.

Our perception of the defendant's conduct in this regard is not altered by the fact that, under the plaintiffs' policy with the defendant, the plaintiffs were obligated to act to secure the defendant's rights against an uninsured motorist and to do nothing that would prejudice such rights. By virtue of this policy provision, the defendant was able not only to invoke the plaintiffs' aid in tolling the statute of limitations on the defendant's claim against the uninsured motorist but also to involve the plaintiffs in an action from which they could not extricate themselves without forfeiting their right to recover from the defendant in a subsequent action against the defendant. Thus, the defendant's request to file the Oklahoma action, made shortly before the expiration of the limitation period for filing an arbitration demand, effectively diverted the plaintiffs' attention toward seeking to fulfill their obligations under the policy and caused them to delay the assertion of their right to a determination of the merits of their claim against the defendant.

■ We find further grounds for estoppel in the fact that here, unlike other cases where estoppel was not found, the defendant gave the plaintiffs no indication, prior to the running of the limitation period, that a question existed as to the plaintiffs' coverage under the policy and the defendant's consequent liability for the plaintiffs' claim. (*Cf.*

*Dickirson v. Pacific Mutual Life Insurance Co.* (insurer explicitly denied coverage for plaintiff's claim in letter to plaintiff nine months before running of statute of limitations); *Florsheim v. Travelers Indemnity Co.* (no estoppel as a matter of law where insurer broke off negotiations and denied liability three months before period of limitation expired); *Allstate Insurance Co. v. Horn* (1974), 24 Ill. App. 3d 583, 321 N.E.2d 285 (insurer not estopped from litigating coverage question after running of period for filing arbitration demand where insurer informed insured three months before end of period that coverage issue existed).) In the instant case it is undisputed that the defendant informed the plaintiffs, through its agent Tripp, that the driver of the other vehicle was uninsured. Further, the defendant had discussed the plaintiffs' claim on this basis with the plaintiffs' attorney up until the time for filing an arbitration demand had passed. Once the plaintiffs filed their late demand for arbitration, however, the defendant denied the uninsured status of the other driver and raised the issue of whether the plaintiffs had a claim for uninsured motorist benefits under the policy. It is a rule of law that an insured has a right to know with reasonable promptness the attitude of an insurer, so that he might take such actions as would save him from loss and damage. (*Allstate Insurance Co. v. Horn.*) In addition, estoppel is based on the principle that one cannot act or conduct himself in a particular manner and then assume a position inconsistent with that conduct to the prejudice of one who has relied upon it. (31 C.J.S. *Estoppel* sec. 108 (1964).) Thus, in the instant case, the defendant's failure to raise the coverage issue until after the period for filing an arbitration demand had expired constitutes further conduct giving rise to a finding of estoppel on the part of the defendant.

■ In the context of the case here presented, we conclude that the defendant's conduct was sufficient to lull even the plaintiffs' able and experienced attorney into a reasonable belief that the plaintiffs' claim would be settled without suit. While an insured's representation by legal counsel in such negotiations may be considered in determining whether an insurer should be estopped from asserting a limitation defense (see *Hurtt v. Davidson* (1980), 84 Ill. App. 3d 681, 406 N.E.2d 90), the fact of the plaintiffs' representation here is not conclusive in view of the affirmative nature of the defendant's conduct. The case of *D'Urso v. Wildheim* (1976), 37 Ill. App. 3d 835, 347 N.E.2d 463, cited by the defendant, may be distinguished on this basis, as the court there found that the plaintiffs' attorney relied, not on conduct by the insurer, but on his own statements and the expansive interpretation he attached to them. (See also *Loughran v. A & M*

*Moving & Storage Co.* (1974), 17 Ill. App. 3d 119, 307 N.E.2d 794.) To the extent, therefore, that the trial court's decision was based on the plaintiffs' representation by legal counsel, we find that it was in error.

We note, finally, that while estoppel is generally a question of fact for the trier of fact, the facts upon which we have relied in the instant case were undisputed and did not rest upon a determination as to the credibility of the witnesses. Based upon these facts we hold that the trial court's decision was contrary to the manifest weight of the evidence. Accordingly, we reverse the judgment of the trial court and remand this cause for a determination of the other issues presented by the plaintiffs' declaratory judgment action.

Reversed and remanded.

KASSERMAN and KARNS, JJ., concur.