EVANSTON INSURANCE
COMPANY, Plaintiff,

v.

SECURITY ASSURANCE
COMPANY, Defendant.

No. 85 C 9757.

United States District Court,
N.D. Illinois, E.D.

March 16, 1988.

Opinion On Motion to Reconsider
May 13, 1988.

---

Robert J. Bates, Jr., Michael M. Marick, Phelan, Pope & John, Ltd., Chicago, Ill., Wilson, Elser, Moskowitz, Edelman & Dicker, New York City, for plaintiff.

Hugh R. McCombs, Jr., Michael J. Gill, Bettina Getz, Mayer, Brown & Platt, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Evanston Insurance Company ("Evanston") seeks a declaration that the Insurance Companies and Affiliates Errors and Omissions Policy (the "Policy") it issued to Security Assurance Company ("Security") does not cover certain claims made against Security. In part Security has responded with the affirmative defense that Evanston is estopped to deny coverage. Security has also advanced several counterclaims.

Evanston has now moved under Fed.R. Civ.P. ("Rule") 56 for a summary judgment rejecting Security's estoppel defense and its counterclaims. Security has filed a cross-motion in both respects.[1] For the reasons stated in this memorandum opinion and order, Evanston's motion is granted and Security's is denied.

### Facts[2] and Prior History

Evanston's issuance of the Policy to Security has provided coverage for professional errors or omissions claims first made against Security between October 1, 1982 and October 1, 1985. On April 27, 1984 the bankruptcy trustee for American Benefits Trust ("ABT") sued Security, alleging Security had agreed to insure ABT.[3]

On May 14, 1984 Security notified Evanston of the *Diamant* claim and requested Evanston both to indemnify it for any losses and to pay defense costs. On November 19, 1985 Evanston denied coverage and brought this action for declarations that (1) it had no duty to pay Security's defense costs and (2) it was not liable to Security for any losses resulting from the *Diamant* or related claims. Security counterclaimed, charging Evanston (1) had breached its contract of insurance by refusing to defend in *Diamant*, (2) had breached its duty of good faith and fair dealing by delaying its investigation and refusing to defend and (3) was liable under Ill.Rev.Stat. ch. 73, ¶ 767 for Security's attorney fees in pursuing this action, due to Evanston's unreasonable delay in settling the *Diamant* claim.

Originally the case was assigned to this Court's former colleague, Honorable Bernard M. Decker. On November 13, 1986 Judge Decker (in "Opinion I") dismissed the count of Evanston's Complaint that asked a declaration as to its ultimate liability to Security on the *Diamant* claim. Opinion I, slip op. at 3–5 concluded no case or controversy then existed because Security might never be found liable to the *Diamant* plaintiffs. In the alternative Judge Decker declined to exercise jurisdiction under the Declaratory Judgment Act because the defense-cost issue was an im-

---

1. Examination of the parties' submissions discloses the current motions are better viewed as legal-issue-narrowing than as the full-fledged submissions that ought to mark motions for summary judgment (see, e.g., the Appendix to this Court's opinion in *Teamsters Local 282 Pension Trust Fund v. Angelos*, 649 F.Supp. 1242, 1252–53 (N.D.Ill.1986)). As it turns out, the posture of the legal issues here is such that this opinion can indeed be claim-dispositive. That means the incompleteness of the factual presentations can cause problems only if this Court's view of the applicable law is overturned on appeal, in which event the effect of the fragmented submission will have to be looked at (see *Teamsters, id.* at 1252; *Green v. Silver Cross Hospital*, 606 F.Supp. 87, 88–89 (N.D.Ill.1984)).

2. Familiar Rule 56 principles impose on the party moving for summary judgment the burden of establishing the lack of a genuine issue of material fact (*Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)). Any factual disputes must be resolved in favor of the nonmovant. Usually cross-motions for summary judgment thus require the Court to take two views of the facts, one favoring each party. While in this case there *are* contested material facts as to Policy's coverage of the underlying claim against Security, fortunately no factual disputes exist on the current motions.

3. That action, *Diamant v. Security Assurance Co.*, No. CA 000843 (Los Angeles Super.Ct.) ("*Diamant*"), is still pending.

mediate controversy, while the issue of Security's (and thus possibly Evanston's) ultimate liability for damages might never ripen.

Security then moved for summary judgment on Count I of its counterclaim (which charges Evanston with breach of a contractual duty to defend), and Evanston countered with its own motion on the same claim. On October 5, 1987 Judge Decker (in "Opinion II") denied both motions:

> 1. Initially he decided (Opinion II, slip op. at 6–7), the Policy did obligate Evanston to reimburse Security for defense costs if the underlying claim was covered by the Policy.
>
> 2. Even so he concluded (*id.* at 7–8) Evanston had no duty under the Policy to pay Security's defense costs *as they were incurred,* even if the claim itself was covered.[4]

That latter conclusion compelled denial of Secretary's motion. As for Evanston's motion, Judge Decker held (*id.* at 9):

> [A]s the coverage questions raised by Evanston will be addressed by the remaining count in the declaratory judgment action, Evanston may still ultimately be obligated to pay [Security's] fees as they are incurred. Therefore, Evanston's cross motion for summary judgment is premature and must be denied.

Both current motions and the parties' opening memoranda were filed before issuance of Opinion II. Security now concedes that its estoppel claim, to the extent it rests on Evanston's refusal to defend, is barred by Opinion II's determination that Evanston had no duty to do so (*Hawkeye Security Insurance Co. v. Hodorowicz,* 84 Ill.App.3d 948, 952, 40 Ill.Dec. 445, 448, 406 N.E.2d 146, 149 (1st Dist.1980)). Despite that concession, Security contends two other factors—Evanston's delinquency in investigating the claim and its failure promptly to deny coverage—estop Evanston from now denying coverage.[5] If that is so, Security reasons Evanston also cannot deny coverage for the defense costs, because the Policy's definition of "Loss" includes defense costs (Policy, Coverage ¶¶ 9, 11).[6]

### Estoppel To Deny Coverage

Under Illinois law[7] an insurer may be estopped from denying coverage when its actions on a claim prejudice the insured. *Western Casualty & Surety Co. v. Brochu,* 105 Ill.2d 486, 500, 86 Ill.Dec. 493, 500, 475 N.E.2d 872, 879 (1985) (citations omitted) succinctly states the operative concerns:

> Estoppel refers to an abatement, raised by law, of rights and privileges of the insurer where it would be inequitable to permit their assertion; such relinquishment need not be voluntary, intended, or desired by the insurer, but it necessarily requires prejudicial reliance on the part

---

4. That conclusion was inescapable, given the Policy's plain language (Coverage ¶ 13):

   It shall be [Security's] duty to defend claims made against them, provided, however, that [Evanston] shall have the option, but not the duty to defend claims made against [Security] for which insurance is afforded by this policy. [Evanston] may also elect at its own expense to participate with [Security] in the investigation, settlement, and defense of any claim made against [Security] for which insurance is provided by this part of the Policy.

5. Security R.Mem. 2 scores Evanston for having ignored this "second prong" of Security's estoppel defense in Evanston's responsive memorandum. That criticism is entirely unwarranted. First, nothing in Security's opening memorandum can fairly be said to have raised the issues Security now presses—it had relied entirely on Evanston's refusal to defend. Second, Evanston's counsel *had* been prescient enough to

guess that Security would change its line of attack and—in an example of preemptive retaliation—did brief the appropriate issues.

6. Under Opinion II's reasoning, Evanston would not be legally obligated to reimburse Security's defense costs as incurred. Instead, under the Policy language quoted in n. 4, it could wait until the *Diamant* action was terminated. Nonetheless both parties are interested in knowing who will ultimately be liable for those defense costs. For example, even if Evanston is not legally required to reimburse Security on a current basis, if it knows it must eventually pay those costs it may exercise its option under Coverage ¶ 13 (see n. 4) to assume the defense now to control costs.

7. Both litigants have treated Illinois law as controlling. It therefore is (see *Eggert v. Weisz,* 839 F.2d 1261, 1263 n. 1 (7th Cir.1988) and cases cited there).

of the insured.... Whether the insured has been prejudiced is a question of fact.... The burden of establishing that fact rests with the insured and must be proved by clear, concise, and unequivocal evidence.... Prejudice will not be presumed....

Here Security says Evanston's failure to act with "reasonable promptness" in notifying Security of a claim dispute prejudiced Security. Under certain circumstances an insurer's delay in denying coverage can trigger estoppel (*Vasilakis v. Safeway Insurance Co.*, 46 Ill.App.3d 369, 374–75, 5 Ill.Dec. 1, 3–4, 361 N.E.2d 1, 3–4 (1st Dist. 1977)). But such circumstances are rare (*id.*):

> While a long delay in asserting a policy defense or disclaimer is normally not enough to constitute an estoppel or waiver, such delay is an important factor to be considered where there is evidence of prejudice. The length of delay is an element in determining the reasonableness or fairness of the insurer's conduct toward the insured.

■ On the scanty record before this Court (see n. 1) it is not possible to assess whether Evanston acted with reasonable promptness in denying coverage. On that issue, almost no evidence of the sort allowed by Rule 56 has been tendered. All the same, it *can* be said with certainty that Security did not rely to its prejudice on whatever delay might arguably be charged to Evanston.

Obviously the most common way an insurer's delay in denying coverage can prejudice an insured is by compromising the insured's legal position—as by lulling it into not taking action within a statute of limitations or contractual time limit. That was true both in *Vasilakis* and in *Sponemann v. Country Mutual Insurance Co.*, 120 Ill.App.3d 211, 219–22, 75 Ill.Dec. 589, 595–97, 457 N.E.2d 1031, 1037–39 (5th Dist. 1983), the only other case Security relies on here (see also *Florsheim v. Travelers Indemnity Co. of Illinois*, 75 Ill.App.3d 298, 303–05, 30 Ill.Dec. 876, 881–85, 393 N.E.2d 1223, 1228–32 (1st Dist.1979)).

Security alleges no such claim-barring type of prejudice here. Rather Security says it is prejudiced because (1) witnesses' recollections may have faded, (2) it has lost control of witnesses and documents because it was sold to another company in the interim and (3) it provided Evanston with privileged documents and Evanston has not protected the privilege. Analysis of those contentions demonstrates they are plainly insufficient, both individually and collectively, to do the job for Security.

First, Security urges this Court to take judicial notice that memories fade with time (R.Mem. 11), and it says there is the "possibility" that has occurred (*id.* at 10). More than that is needed. Prejudice must be shown by "clear, concise and unequivocal evidence" (*Western Casualty*, 105 Ill.2d at 500, 86 Ill.Dec. at 500, 475 N.E.2d at 879), and that standard must guide the determination whether a material factual dispute exists (*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2512–14, 91 L.Ed.2d 202 (1986)). Security has tendered *no evidence* even suggesting that any witness no longer recalls events of the critical period. That not only defeats its own summary judgment motion but—because a nonmovant who bears the burden of proof at trial must adduce evidence sufficient to show a factual dispute (*Celotex*, 106 S.Ct. at 2552–53)—requires summary judgment on this issue for Evanston.

■ Second, Security says (1) it was a wholly-owned subsidiary of St. Regis Paper Company ("St. Regis") at the times relevant to the Security–Evanston coverage dispute and (2) St. Regis officers "participated in arranging" the policy. Then in November 1984 Security was sold to Central National Insurance Company of Omaha ("Central") and "within six months" it "lost ready access" to those officers and their files (Davlin Aff. ¶¶ 3, 4 and 5; P.R. Mem.Ex.D). Security's affiant does not say those officers or their files are unavailable to it, nor does he even say it has become difficult to obtain cooperation from Central. Illinois simply does not treat an insured's inconvenience as sufficient prejudice to warrant estoppel (e.g., *National*

*Tea Co. v. Commerce and Industry Insurance Co.,* 119 Ill.App.3d 195, 204–06, 74 Ill.Dec. 704, 712, 456 N.E.2d 206, 214 (1st Dist.1983) (no prejudice found in mere surprise to insured when insurer first raised defense five days before trial); *Midwest Triangle Paint Works, Inc. v. Firemen's Insurance Co.,* 36 Ill.App.2d 65, 70, 183 N.E.2d 562, 565 (1st Dist.1962) (no prejudice found in insurer's notifying insured, five or six weeks before end of limitations period, that claim would be denied); *Old Mutual Casualty Co. v. Clark,* 53 Ill. App.3d 274, 279–80, 11 Ill.Dec. 151, 154–55, 368 N.E.2d 702, 705–06 (1st Dist.1977) (no prejudice found in delay requiring insured to obtain counsel)).

■ Third, Security says it made documents (including one document purportedly subject to the work-product privilege) and witnesses available to Evanston during the period before Evanston denied coverage, because Security had been "lulled" into the belief Evanston was not contesting liability. This factor is a bit more troubling than the other asserted grounds, and it comes a bit closer to what some Illinois cases have found estoppel-raising facts.[8] Yet Security has not even approached a showing by the required clear and unequivocal evidence either (1) that its cooperation with Evanston was caused by its reliance on a reasonable belief that Evanston would cover the *Diamant* claim or (2) that it has been prejudiced in fact. It offers no evidence at all that it would not have turned over documents had it been aware of a coverage dispute, nor has it tendered any evidentiary basis for its assertion that one of the documents was privileged.[9]

Having said all that, this Court is constrained to point out the inherent weakness of Security's position over and above its evidentiary failures discussed in this opinion. After all, Security's basic argument is that Evanston's mere failure explicitly to deny coverage was enough to lull Security into believing there was no coverage dispute. Such an argument might perhaps carry some weight when the insured is an unsophisticated individual, relying on his or her insurer to "do right" by him or her. But Security is the precise opposite of such an insured:

1. Security is itself an insurance company, by definition familiar with the law of insurance, and it was represented at all times by counsel. Even when the insured is an individual, Illinois courts are less likely to find "estoppel by lulling" if he is represented by counsel (e.g., *Hurtt v. Davidson,* 84 Ill.App.3d 681, 683, 40 Ill.Dec. 389, 391, 406 N.E.2d 90, 92 (1st Dist.1980)).

2. By their very nature, the underlying facts of the *Diamant* claim put Security on notice that coverage would be an issue. That claim involves Security's acts before the Policy's coverage period. Security necessarily had to know Evanston would seek to determine both (a) whether the claim was first made during the coverage period and (b) whether Security's officers knew of the potential claims. It could not reasonably have thought Evanston would acknowledge coverage without an investigation.[10]

3. All the evidence Security tendered in support of its motion shows it knew there was a coverage dispute at least as early as March 1985, and probably much

---

8. In *Sponemann* the insurer asked the insured to institute out-of-state court proceedings, supposedly to protect the insurer's subrogation rights. Then the insurer entered those proceedings in opposition to the insured, causing the insured to lose rights under Illinois law (120 Ill.App.3d at 213–17, 75 Ill.Dec. 591–92, 457 N.E.2d at 1033–34). That situation—the best Security has been able to muster by way of analogy—would have to be stretched a great deal to support the granting of comparable estoppel relief to Security in this case.

9. Nothing on the face of the memorandum (Complaint Ex. B) indicates it is privileged work product, much less that it would not have been discoverable anyway in this dispute.

10. It hardly seems accidental that Security presents no affidavit of one of its officials presenting a *factual* showing of its having been lulled by Evanston's silence. Instead it just asserts in its reply memorandum that this was so. That does not of course meet its Rule 56 burden (*International Union of Operating Engineers v. Centor Contractors, Inc.,* 831 F.2d 1309, 1313 n. 4 (7th Cir.1987)).

sooner (see, e.g., D.Mem.Ex. 1; Karma Aff. ¶¶ 4–9). Security's April 23, 1985 demand letter (*id.* Group Ex. A), sent by its counsel, is hardly the communication of one who has been "lulled" into forfeiting its rights.

### Conclusion

Security has failed to show that it is entitled to judgment on its affirmative defense as a matter of law. Its motion is denied. Conversely, Evanston has shown that there are no disputed material facts and it *is* entitled to a judgment as a matter of law. That determination, coupled with Judge Decker's earlier determination, entitles Evanston to judgment on its first count. Accordingly, this Court declares:

1. Evanston has no current duty to reimburse Security for the cost of defending *Diamant* and related claims.

2. Such a duty will arise only if and when (a) Security is found liable in *Diamant* and (b) Evanston is later found liable to Security under the Policy.

Although Evanston has not now sought summary judgment on Security's counterclaims, it certainly seems entitled to a judgment as a matter of law on those claims. But matters have not quite reached that point. *Celotex*, 106 S.Ct. at 2554 teaches this Court may enter summary judgment sua sponte "so long as the losing party was on notice that [it] had to come forward with all of [its] evidence." Because of the segmented briefing established earlier by Judge Decker (see n. 1), this Court deems it advisable to seek confirmation that Security has had that opportunity.

Security is therefore ordered to file, on or before March 30, 1988, either (1) a memorandum opposing the entry of summary judgment on its counterclaims, properly supported by evidence in accordance with Rule 56(e), or (2) an acknowledgement that it lacks such evidence. This Court will then determine whether it is appropriate to enter judgment for Evanston on the counterclaims.

### ON MOTION TO RECONSIDER

Security Assurance Company ("Security") has filed a Motion for Reconsideration and a Motion To Vacate, Amend and Alter, or Alternatively To Clarify ("Motion To Vacate"), both motions being directed to this Court's March 16, 1988 order (the "Order"). As requested in the Order, Security has also filed a memorandum addressing the issue whether summary judgment should be entered against Security on its Counterclaims.

In its Motion for Reconsideration, Security has asked this Court to reconsider the portion of the Order that grants summary judgment in favor of Evanston Insurance Company ("Evanston") on Security's affirmative defense of estoppel. Security's Motion for Reconsideration is denied.

Security's Motion To Vacate is directed to the portions of the Order in which this Court stated (1) Evanston is entitled "to judgment on its first count" (Order at 1428) and (2) Evanston will have a duty to pay Security's costs of defense in the *Diamant* action "only if and when (a) Security is found liable in *Diamant* and (b) Evanston is later found liable to Security under the Policy" (Order at 1428). This Court finds those aspects of Security's motion well-taken and accordingly vacates the quoted portions of the Order that (1) award judgment on Count I and (2) declare the circumstances under which Security may recover its attorney's fees and defense costs.

As to Security's counterclaims, this Court grants Security's motion for voluntary dismissal on its Counterclaim Count II. Summary judgment is not being entered against Security on its Counterclaim Counts I and III, and the parties will be permitted to take discovery on those Counts.